PEOPLE v RODRIGUEZ
PEOPLE v PORTER

Docket Nos. 208845, 210561. Submitted February 5, 2002, at Detroit.
Decided April 26, 2002, at 9:05 A.M. Leave to appeal sought.

Frank C. Rodriguez was convicted of conspiracy to possess with
intent to deliver and to deliver more than 650 grams of a mixture
containing cocaine, possession with intent to deliver 50 or more
but less than 225 grams of a mixture containing cocaine, and two
counts of delivery of less than fifty grams of a mixture containing
cocaine and Tico C. Porter was convicted of conspiracy to possess
with intent to deliver 225 or more but less than 650 grams of a mix-
ture containing cocaine following a joint jury trial in the Oakland
Circuit Court, Meyer Warshawsky, J. A grand jury had returned an
indictment that alleged that both defendants, Paul Potter (a cocon-
spirator who pleaded guilty to a lesser charge in exchange for his
testimony against the defendants), and others participated in a con-
spiracy that began in September 1990 and continued until March
1994 in which Rodriguez purchased cocaine in amounts of one
ounce to one kilogram and that Porter, Potter, and others aided
Rodriguez in the transporting, storing, weighing, and packaging of
the cocaine that was then sold in smaller amounts in Oakland
County during that period. Each defendant appealed, and the
appeals were consolidated.

The Court of Appeals *held*:

1. Rodriguez argues that his conviction on the conspiracy count
was precluded on double jeopardy grounds, claiming that his
December 1992 guilty plea for possession with intent to deliver less
than fifty grams of a mixture containing cocaine, which resulted
from a search following his September 1990 arrest for a traffic
offense, precluded the bringing of the conspiracy count because
the September 1990 possession charge was part of the same crimi-
nal transaction that resulted in the conspiracy charge. Michigan
adheres to the same transaction test in determining whether two
offenses are the same offense for purposes of double jeopardy pro-
tection against successive prosecutions. When the offenses at issue
are all specific intent crimes, the prosecution is generally required
to join at trial all the charges against a defendant that grew out of a

continuous time sequence and display a single intent and goal. The facts of this case fail to support a conclusion that the September 1990 possession charge and the conspiracy charge in this case were either committed in a continuous time sequence or displayed a single intent and goal. Rodriguez' three possession and delivery convictions in this case were committed between eleven and fourteen months after his commission of the September 1990 possession charge. These subsequent drug transactions were independent of the September 1990 transaction and are sufficient to support the conspiracy conviction. That Rodriguez' drug transactions continued over the course of 3½ years does not transform those activities into a single criminal transaction. Accordingly, the conspiracy conviction does not offend the constitutional protection against double jeopardy.

2. The court's jury instructions concerning the conspiracy count, including the instruction that the jury could aggregate the amounts of individual sales if it found that there was an agreement to deliver the aggregated amount, fairly presented the issues to be tried and sufficiently protected both defendants' rights.

3. Because Rodriguez was charged with conspiring with Porter, Potter, and others and because there was evidence beyond a reasonable doubt that Rodriguez conspired with others to possess with intent to deliver more than 650 grams of a mixture containing cocaine, the evidence supports Rodriguez' conspiracy conviction, notwithstanding the fact that Porter was convicted of conspiracy to possess with intent to deliver 225 or more but less than 650 grams of a mixture containing cocaine.

4. Neither Rodriguez nor Porter was denied his constitutional rights to due process, to compulsory process, and to present a defense as a result of the court's dismissing a defense witness, Robert Proden, after Proden invoked his right against self-incrimination in response to questions by the prosecution concerning his use of cocaine at a party hosted by Rodriguez. Neither defendant objected at trial to the dismissal of Proden. Although the court's acceptance of Proden's general invocation of his right against self-incrimination and its resulting dismissal of Proden as a witness, rather than allowing Proden to invoke his right against self-incrimination question by question, may have been improper, the defendants have failed to show that they were prejudiced by the court's decision or that the court's decision resulted in the conviction of an innocent man or seriously affected the fairness, integrity, or public reputation of the proceedings. The prosecution's questions concerning Proden's drug use were relevant, and the court did not err in failing to require that the prosecution grant Proden immunity from pros-

ecution, given that there was testimony implicating Proden in the drug conspiracy.

5. Rodriguez is not entitled to a new trial on the basis of the admission of a hearsay statement of codefendant Porter, who did not take the stand and testify, that Rodriguez was "the biggest drug dealer in Oakland County." Because the statement by Porter was against his penal interest, his hearsay statement was properly admissible under MRE 804(b)(3), the statement having sufficient indicia of reliability to provide the trier of fact a satisfactory basis for evaluating the truth of the statement. Further, the admission of that hearsay statement was not outcome determinative, because there was testimony by other witnesses that Rodriguez had made similar claims.

6. Neither Rodriguez nor Porter was denied a fair trial because of prosecutorial misconduct. To the extent that the prosecution's statements during opening and closing arguments may have been seen as diminishing the people's burden of proof and shifting the burden of proof to Rodriguez, the prejudicial effect was cured by the court's curative instructions and final jury instructions that properly set forth that the burden of proof was on the prosecution to prove Rodriguez' guilt beyond a reasonable doubt. The prosecution's references to statements that had been made by witness Potter to the prosecution and the police did not result in impermissible vouching by the prosecution for the credibility of the witness. Any prejudice to either Rodriguez or Porter resulting from the prosecution's reference to the prior statements made by Potter was cured by the court's comments and by its jury instructions. Review of the remarks that Rodriguez asserts denigrated his counsel does not reveal any clear error that could not have been cured by an appropriate instruction had an objection been made at trial.

7. Rodriguez and Porter were not denied the right to a speedy trial.

8. The testimony of a police detective that Porter's actions were consistent with those of a bodyguard was properly admitted as expert testimony. In any event, any error pertaining to the admission of that testimony was harmless in light of the overwhelming evidence that established that Porter conspired with Rodriguez and Potter to deliver cocaine.

9. The trial court did not abuse its discretion by declining to depart downward from the mandatory minimum sentence in imposing sentence on Porter.

10. The record fails to support Porter's claim that he was denied effective assistance of counsel.

Affirmed.

1. Constitutional Law — Double Jeopardy — Same Transaction — Controlled Substances — Conspiracy.

The making of illegal sales of controlled substances over an extended period does not transform those sales into a single transaction for the purpose of double jeopardy; a conviction involving a single particular illegal sale of a controlled substance does not preclude a subsequent conviction of conspiracy to deliver controlled substances where the conspiracy charge is based on sales that were independent of the sale that led to the prior conviction.

2. Conspiracy — Controlled Substances — Inconsistent Verdicts — Untried Coconspirators.

A determination by a jury in a trial involving jointly tried defendants charged with conspiring to deliver a controlled substance that both defendants are guilty of conspiring to deliver controlled substances but that they are guilty of conspiring to deliver differing amounts of the controlled substance does not constitute inconsistent verdicts where there were untried coconspirators and there was evidence presented at trial that was sufficient to establish the existence of conspiracies involving the differing amounts.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Robert C. Williams*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Douglas W. Baker*) and Frank C. Rodriguez, in propria persona, for Frank C. Rodriguez.

*Robin M. Lerg* and Tico C. Porter, in propria persona, for Tico C. Porter.

Before: Neff, P.J., and Cavanagh and Saad, JJ.

Neff, P.J. In these consolidated cases, defendants appeal as of right their convictions of various drug offenses following a joint trial. Defendant Rodriguez was convicted of conspiracy to possess with intent to deliver and to deliver more than 650 grams

of a mixture containing cocaine, MCL 750.157(a), 333.7401(2)(a)(i), possession with intent to deliver 50 or more but less than 225 grams of a mixture containing cocaine, MCL 333.7401(2)(a)(iii), and two counts of delivery of less than fifty grams of a mixture containing cocaine, MCL 333.7401(2)(a)(iv). He was sentenced to consecutive prison terms of life imprisonment without parole for the conspiracy conviction, ten to thirty years for the conviction of possession with intent to deliver 50 or more but less than 225 grams of a mixture containing cocaine, and two to thirty years each for the convictions of delivery of less than fifty grams of a mixture containing cocaine. Defendant Porter was convicted of conspiracy to possess with intent to deliver 225 or more but less than 650 grams of a mixture containing cocaine, MCL 750.157(a), 333.7401(2)(a)(ii) and sentenced to twenty to thirty years' imprisonment. We affirm.

I

Defendants' convictions arise from their alleged involvement in sales of cocaine in Waterford Township and Pontiac from approximately September 1990 to March 1994. In 1988, the Waterford Police Department received information that Rodriguez was selling cocaine in area bars. In 1989 and 1990, the police conducted surveillance of Rodriguez' activities. On September 28, 1990, the police arrested Rodriguez for driving while his operator's license was suspended and, in a search incident to the arrest, found cocaine; Rodriguez was charged with possession with intent to deliver less than fifty grams of cocaine. In December 1992, Rodriguez pleaded guilty to that charge and was sentenced to lifetime probation.

In the interim, in April 1992, the Waterford Police, in conjunction with the Oakland County Sheriff's Department and the Narcotics Enforcement Team, began a larger investigation into defendants' drug dealing on the basis of information that the size and scope of the defendants' organization had grown. The police resumed surveillance, during which they observed Porter present with Rodriguez while Rodriguez was dealing cocaine. In July 1993, a grand jury convened and, in March 1994, returned an indictment charging defendants. Also named in the indictment was a coconspirator, Paul Potter, who pleaded guilty to a lesser charge in exchange for his testimony against defendants.

The indictment alleged that both defendants, Potter, "and others both known and unknown to the Grand Jury" participated in a conspiracy beginning about September 1990 and continuing until March 1994, in which Rodriguez purchased cocaine in quantities ranging from one ounce to one kilogram and that Porter and Potter aided Rodriguez in the transporting, storing, weighing, and packaging of the cocaine that was sold in smaller amounts in Oakland County during this period. The indictment also charged defendants and Potter each with possession with intent to deliver more than 650 grams of a mixture containing cocaine in November 1991 and charged Rodriguez with two counts of delivering less than fifty grams of a mixture containing cocaine that involved transactions on August 13, 1991, and September 10, 1991, and one count of possession with intent to deliver less than fifty grams of a mixture containing cocaine that involved a transaction on

December 17, 1991. Following a preliminary examination, defendants were bound over on all charges.

After defendants were bound over for trial, the second count charging Porter with possession with intent to deliver more than 650 grams of a mixture containing cocaine was amended to possession with intent to deliver 50 or more but less than 225 grams of a mixture containing cocaine. The second count of the indictment charging Rodriguez with possession with intent to deliver more than 650 grams of a mixture containing cocaine was amended to possession with intent to deliver 50 or more but less than 225 grams of a mixture containing cocaine. Following a jury trial, defendants were convicted as set forth above.

II

DOCKET NO. 208845

A

Rodriguez first argues that his conspiracy conviction violates the protection against double jeopardy under the Michigan Constitution, Const 1963, art 1, § 15, because the conspiracy charge stems from the same criminal transaction as the prior drug conviction of possession with intent to deliver. We disagree that Rodriguez' conspiracy conviction violates the double jeopardy protection against successive prosecutions for the same offense.

Under the Michigan Constitution, "[n]o person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15; *People v Wilson*, 454 Mich 421, 427; 563 NW2d 44 (1997). The double

jeopardy guarantee protects against multiple punishments, or successive prosecutions, for the same offense. *Id.* The issue of double jeopardy is generally a question of law, which this Court reviews de novo. *People v Carl White,* 212 Mich App 298, 304-305; 536 NW2d 876 (1995).

Michigan adheres to the "same transaction" test, adopted in *People v George White,* 390 Mich 245, 258; 212 NW2d 222 (1973), in determining whether two offenses are the "same offense" for purposes of the double jeopardy protection against successive prosecutions. *People v Sturgis,* 427 Mich 392, 401; 397 NW2d 783 (1986); *Carl White, supra* at 305-306. Under the test, when the offenses at issue are all specific intent crimes, the prosecution is generally required to join at trial all the charges against a defendant that grew out of a continuous time sequence and display a single intent and goal. *Sturgis, supra; Crampton v 54-A Dist Judge,* 397 Mich 489, 501-502; 245 NW2d 28 (1976).[1]

The crimes at issue all involve specific criminal intent. *People v Justice (After Remand),* 454 Mich 334, 345-346; 562 NW2d 652 (1997); *People v Jackson,* 153 Mich App 38, 46; 394 NW2d 480 (1986). Therefore, this Court must decide if the crimes were committed in a continuous time sequence and displayed a single intent and goal. We find that neither requirement is met on the facts of this case. *People v Spicer,* 216

---

[1] Alternatively, when the crimes charged do not all involve specific intent, the test focuses on whether the offenses were part of the same criminal episode and involve laws intended to prevent the same or a similar harm or evil, rather than substantially different harms or evils. *Crampton, supra; People v Ainsworth,* 197 Mich App 321, 323; 495 NW2d 177 (1992).

Mich App 270, 272; 548 NW2d 245 (1996); *Carl White,
supra* at 306.

Michigan's adoption of the same transaction test
evolved from circumstances in which a defendant
abducted a female acquaintance in the city of Inkster;
the defendant struck her with the butt of a gun,
forced her into a car, drove to Detroit, and sexually
assaulted her. *George White, supra* at 250-251. The
defendant was convicted in the Wayne Circuit Court
of kidnapping and, in a separate proceeding in the
Detroit Recorder's Court, was subsequently convicted
of rape and felonious assault. *Id.* at 251. Adopting the
same transaction theory for analyzing a double jeop-
ardy claim, the *White* Court held that because the
three offenses were part of one criminal transaction,
the second prosecution was a violation of double
jeopardy. *Id.* at 259. The Court observed that under
the facts of the case, the same transaction test pro-
vided the only meaningful approach to the protection
against double jeopardy, *id.* at 257-258, but also noted
that its holding was limited to the facts of the case
and similar factual situations. *Id.* at 258, n 6.

In applying the same transaction test, subsequent
appellate decisions have required a close, unified pur-
pose relationship between the crimes. *Jackson, supra*
at 46. The defendant must demonstrate that there was
a direct, factual connection between the crimes, not
merely temporal happenstance. *Id.* It is black-letter
law that conspiracy and the underlying substantive
offense are separate and distinct crimes. *People v
Hermiz,* 462 Mich 71, 81, n 14 (TAYLOR, J.); 611 NW2d
783 (2000); *People v Denio,* 454 Mich 691, 712; 564
NW2d 13 (1997). "[T]he crime of conspiracy does not
merge into the offense committed in furtherance of

the conspiracy." *Id.* Rodriguez' conspiracy conviction and the earlier drug conviction did not arise from the same transaction. The mere fact that the conspiracy charge against Rodriguez covered a four-year period from 1990 though 1994, during which Rodriguez pleaded guilty of a separate drug offense involving a single transaction, does not amount to being tried twice for the same offense.

This Court has previously found no double jeopardy violation in successive prosecutions for drug offenses where the charges stemmed from multiple drug transactions. *People v Edmonds*, 93 Mich App 129, 133-134; 285 NW2d 802 (1979) (two sales of heroin to the same informant on the same day, one in the morning and one in the afternoon, indicated no connection that would render them part of a single transaction under *George White, supra*; conviction for the morning sale was not barred by former jeopardy for conviction involving the afternoon sale); *People v Cuellar*, 76 Mich App 20, 21-23; 255 NW2d 755 (1977) (two sales of heroin just over a month apart, although to the same undercover agent, did not reveal a single intent and goal, but rather an intent to deliver different heroin); *People v Martinez*, 58 Mich App 693, 694-695; 228 NW2d 523 (1975) (two deliveries of heroin, nine days apart, to the same undercover officer during the course of a single investigation were not part of one criminal transaction).

In *Martinez, id.* at 694-695, the Court found no evidence of a connection between the sales, such as an agreement after the first delivery to return for another sale. The Court held that proof that the deliveries of heroin were made to the same agent during the course of a continuous undercover investigation

does not "relate the events intimately enough so as to characterize them as being part of a single transaction under the test adopted in *People v White*." *Id.* at 695.

In *Cuellar, supra* at 22, the Court rejected the defendant's argument that the five sales were part of a "unitary supply contract" to the undercover agent and therefore part of the same transaction. The Court noted that *George White* was never intended to apply to the situation presented in *Cuellar. Id.* Further, even though the police may have used the five sales to "discover how big a dealer [the] defendant really was and who his sources were," the defendant had no single objective, goal, or intent. *Id.* at 23.

Later, in *Jackson, supra*, this Court again rejected a double jeopardy claim where the defendant was separately charged with delivery of marijuana and possession of marijuana with intent to deliver stemming, respectively, from a sale of marijuana to an informant and a subsequent search the same day of the defendant's car and home. The Court rejected the defendant's argument that the two charged offenses were really only one single transaction, stating:

> [I]t cannot be said that defendant committed the two charged offenses by way of a single transaction or that the offenses comprised an "essentially unitary criminal episode." Defendant did not display the type of singular purpose evinced by the defendant in *White*. . . .
>
> Nor are we able to conclude that these facts demonstrate the type of continuous time sequence contemplated by the *White/Crampton* same transaction test. Defendant was charged with possession with intent to deliver certain marijuana and with delivery of certain other marijuana. The conduct constituting the alleged possession began when defendant obtained the marijuana and formed the intent to dis-

tribute it, and did not end until he was divested of possession by the police. In the interim, defendant sold other marijuana. On these facts, we believe that the most that can be said is that the charged offenses involved a *concurrent* time sequence. Defendant essentially sold some marijuana while allegedly warehousing other marijuana. Thus, the sequence of conduct in this case may be simultaneous, but it is not continuous. [*Jackson, supra* at 49-50.]

As in *Jackson*, the circumstances in this case present a situation of concurrent or simultaneous conduct rather than one continuous time sequence involving a single intent and goal. Rodriguez' convictions in this case were based on transactions independent from the September 28, 1990, traffic arrest and search that resulted in the charge of possession with intent to deliver cocaine to which he pleaded guilty in December 1992. The charge of possession with intent to deliver 50 or more but less than 225 grams of a mixture containing cocaine was based on conduct in November 1991 in which defendants and another man possessed cocaine; the two convictions of delivery of less than fifty grams of a mixture containing cocaine were based on separate deliveries of cocaine to an undercover agent on August 13, 1991, and September 9, 1991. Evidence of these subsequent and independent drug transactions that took place about a year after Rodriguez' 1990 arrest support the conspiracy conviction. The mere fact that Rodriguez' cocaine dealing continued over the course of four years does not transform all the drug-related activities during that period into a single criminal transaction.

A criminal offense may occur in conjunction with another criminal offense and still constitute two separate transactions under the double jeopardy principles, particularly where there are repeated occur-

rences to support the separate charges. *Jackson*, *supra* at 46-47. In *Carl White*, *supra* at 306-307, the Court held that a misdemeanor conviction of stalking on July 17, 1993, did not bar later conviction of felony stalking for harassment on June 9, 1993, involving the same victim. The Court reasoned that the charges arose from distinct stalking behavior on distinct dates, which independently established the requisite course of conduct to support the separate charges, "[e]ven if the continuous stalking from September 1992 through August 1993 formed the basis of both the June 1993 and the July 1993 offenses." *Id.* at 307.

The purpose of the state protection against successive prosecutions for the same offense is to prevent harassment of a defendant and protect against vexatious proceedings. *Jackson*, *supra* at 42, 45. Rodriguez' conspiracy conviction does not offend the constitutional protection against double jeopardy.

B

Rodriguez next argues that the jury instructions denied him a fair trial because they removed the only contested element of the conspiracy charge from the jury's consideration. We disagree.

Rodriguez contends the trial court's instruction that "[t]he delivery and sale of narcotics on a regular basis, which contributes to the promotion of a continuing conspiracy to deliver[,] are not separate transactions" erroneously directed the jury to aggregate the evidence of numerous small transactions into a single transaction to find Rodriguez guilty of conspiracy to deliver more than 650 grams of cocaine. While the court's instruction may be slightly imperfect in

stating that the jury *may* view a series of smaller drug transactions in the aggregate, *Justice, supra* at 355, we find no error requiring reversal because the trial court properly instructed the jury that "[i]f you believe the evidence so shows, you *may* add up the separate amounts to show that there was an agreement to deliver over 650 grams or more [sic] of any mixture containing the controlled substance cocaine" (emphasis added). Reversal is not required because the instructions fairly presented the issues to be tried and sufficiently protected Rodriguez' rights. *People v Davis*, 216 Mich App 47, 54; 549 NW2d 1 (1996).

Rodriguez also claims that the trial court erred in failing to give his requested special instructions that would have clarified the applicable legal principles pertaining to the conspiracy charge. Rodriguez argues the omission precluded the jury from considering his theory "that the drug sales were to be viewed separately or as part of smaller conspiracies, and not as part of one all-embracing conspiracy." We find no error.

The trial court's jury instruction properly covered the formation of conspiracy and the definitions in accordance with the standard criminal jury instructions. The instructions fairly presented the issues to be tried and sufficiently protected Rodriguez' rights. *Id.* Accordingly, there was no instructional error when the trial court declined Rodriguez' request for additional special instructions.

C

Rodriguez next argues that he was denied his right to a unanimous verdict because the court failed to

instruct the jurors that they must unanimously agree regarding the identity of at least one coconspirator. We disagree.

Rodriguez failed to preserve this issue for appeal. This Court reviews unpreserved claims of instructional error for plain error that affect substantial rights. *People v Snider*, 239 Mich App 393, 420; 608 NW2d 502 (2000), citing *People v Carines*, 460 Mich 750, 761-764, 774; 597 NW2d 130 (1999). A reviewing court should reverse only if the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 763-764, 774.

Rodriguez cites no specific authority in support of his argument that he was denied his right to a unanimous verdict when the jury verdict did not disclose unanimous agreement about which coconspirators agreed with him to deliver more than 650 grams of cocaine. Rodriguez relies on *People v Cooks*, 446 Mich 503; 521 NW2d 275 (1994), in asserting the general proposition that "a judge has a sua sponte duty to give a detailed unanimity requirement when the facts suggest a need for one."

This Court has previously rejected the claim that a conviction of conspiracy to possess with intent to deliver over 650 grams of cocaine must be set aside under the "no one-man conspiracy" rule where the codefendant conspirator was found guilty of conspiring to possess with intent to deliver 225 or more *but less than* 650 grams of cocaine, because the charges were nonspecific in alleging that the defendant conspired with his codefendant and others. *People v Charles Williams*, 240 Mich App 316, 329-331; 614

NW2d 647 (2000). The *Charles Williams* Court found no basis for setting aside the conspiracy conviction

> because the felony information in the instant case charged that defendant and [his codefendant] conspired together and with *others*, and there was evidence presented from which a jury could have found beyond a reasonable doubt that defendant had conspired with others to possess with intent to deliver over 650 grams of cocaine. [*Id.* at 330-331 (emphasis in *Charles Williams*).]

Rodriguez has failed to show a plain error that affected his substantial rights where the indictment charged that Rodriguez conspired with Porter, Potter, and "others both known and unknown to the Grand Jury" and evidence beyond a reasonable doubt supported a conclusion that he conspired with others, as charged, to possess with intent to deliver over 650 grams of a mixture containing cocaine.

D

Rodriguez next argues that he is entitled to a new trial because he was denied his constitutional rights to due process, to compulsory process, and to present a defense when an important defense witness, Robert Proden, was precluded from taking the witness stand by the prosecutor's misconduct and the trial court's erroneous rulings. We disagree.

Constitutional questions are reviewed de novo. *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997). This Court reviews factual findings for clear error. MCR 2.613(C). With respect to issues that were not raised below, the standard of review is whether there was plain error that affected the defendant's substantial rights. *Carines, supra* at 764-765.

Rodriguez claims error in the trial court's acceptance of a witness' general invocation of the right against self-incrimination, following which the court dismissed the witness, as opposed to a question-by-question invocation of the right. Rodriguez did not object to the trial court's procedure; thus, we review this issue for plain error. *Id.*

Although the trial court's procedure of dismissing the witness after he indicated that he was invoking his right against self-incrimination may have been improper, *People v Guy*, 121 Mich App 592, 612-613; 329 NW2d 435 (1982), Rodriguez has failed to show that he was prejudiced, i.e., that the error, if any, affected the outcome of the lower court proceedings. *Carines, supra* at 763-764. Moreover, reversal of Rodriguez' convictions would be warranted only if the plain forfeited error resulted in the conviction of an actually innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of the proceedings, neither of which has been shown to exist in the present case. *Id.*

We find no merit in Rodriguez' contention that the prosecutor "drove defense witness Proden from the stand" by posing potentially incriminating questions concerning the witness' cocaine use, which were irrelevant under MRE 401. Evidence that the witness used cocaine at a party hosted by Rodriguez cannot be viewed as irrelevant. Nor do we find error in the trial court's failure to compel the prosecution to grant the witness immunity, given that the witness was implicated in the drug conspiracy by other testimony, and the lack of justification for granting immunity. *People v Schmidt*, 183 Mich App 817, 832; 455 NW2d 430 (1990).

E

Rodriguez next argues that the admission of the hearsay statement of codefendant Porter that Rodriguez was "the biggest drug dealer in Oakland County" violated defendant's constitutional right to confrontation, US Const, Am VI; Const 1963, art 1, § 20, because Porter, who did not testify, was not subject to cross-examination concerning the statement. Rodriguez argues that the error was outcome determinative because the only real issue with respect to the conspiracy charge was whether Rodriguez "was as large a drug dealer as the prosecution portrayed him to be," i.e., "[h]is defense was not that he had never conspired to sell cocaine, but that he had never conspired to sell more than 650 grams of it."

Rodriguez failed to preserve this issue for review. Nonetheless, this Court may consider constitutional issues that could be decisive of a case even though not preserved. *Pitts, supra* at 263. This Court reviews unpreserved claims of constitutional error for plain error that affected substantial rights. *Carines, supra* at 763-764, 774.

At trial, a mutual friend of both defendants, Mary Chopski, who was also Porter's former girlfriend, testified that Porter told her that Rodriguez "was the biggest drug dealer in Oakland County." Rodriguez first argues the statement was inadmissible hearsay and does not fall within any hearsay exception.

We find no error in the admission of the statement under MRE 804(b)(3), as a statement against Porter's penal interest. *People v Poole*, 444 Mich 151, 159; 506 NW2d 505 (1993); *People v Schutte*, 240 Mich App 713,

715-716; 613 NW2d 370 (2000). The requirements for the admission of Porter's statement were met. *Id.* First, Porter was unavailable because he declined to testify at trial. *Id.* at 716. Second, contrary to Rodriguez' claim that Porter's statement incriminated Rodriguez only, Porter's statement was against Porter's penal interest because it served to incriminate him also, insofar as he could be charged as a coconspirator in Rodriguez' drug trafficking. *People v Barrera,* 451 Mich 261, 270-272; 547 NW2d 280 (1996). Third, "a reasonable person in the declarant's position would have believed the statement to be true," given the defendants' close relationship. *Schutte, supra* at 715-716.

Further, the statement was properly admitted against Rodriguez, as well as Porter. *Poole, supra* at 159-161; *Schutte, supra* at 717-719. Given the totality of the circumstances in this case, Porter's statement possessed sufficient indicia of reliability to be admitted against Rodriguez. *Poole, supra* at 164-165. Porter voluntarily made the statement to defendants' mutual friend, without any apparent prompting. *Id.* Accordingly, there was no plain error in admitting Porter's statement because it satisfied Confrontation Clause concerns where it was a statement against Porter's penal interest and there were sufficient indicia of reliability "to provide the trier of fact a satisfactory basis for evaluating the truth of the statement." *Id.* at 164; *Schutte, supra* at 720.

Even were we to find plain error in the admission of the statement, Rodriguez has failed to show that his substantial rights were affected, which requires a showing of prejudice. *Carines, supra* at 763-764. Any error would not have been outcome determinative

given other similar testimony and the nature of the evidence against Rodriguez. Before the admission of the statement at issue, one of Rodriguez' close associates testified that Rodriguez would boast, "I'm the biggest dope dealer around." Further, another witness testified that he was a close friend of Rodriguez and that Rodriguez said that he (Rodriguez) was "the biggest . . . drug dealer [in the area]."

Finally, reversal is not required because there is no indication that Rodriguez was actually innocent of the conspiracy charge or that the alleged error seriously affected the fairness, integrity, or public reputation of these judicial proceedings. *Id.* There was strong evidence establishing that Rodriguez conspired to deliver more than 650 grams of a mixture containing cocaine during the period from September 1990 to March 1994, including specific testimony from a coconspirator that he participated in a conspiracy with Rodriguez to deliver over 650 grams of a mixture containing cocaine.

Given our finding of no error in the admission of the statement, and the lack of prejudice it follows that trial counsel's failure to object to the statement did not deprive Rodriguez of the effective assistance of counsel. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

F

Rodriguez next argues that three instances of prosecutorial misconduct require reversal of his conviction. We disagree.

The test of prosecutorial misconduct is whether Rodriguez was denied a fair and impartial trial. *People*

*v Paquette*, 214 Mich App 336, 342; 543 NW2d 342 (1995). Prosecutorial misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. *Id.* The propriety of a prosecutor's remarks depends on all the facts of the case. *People v Johnson*, 187 Mich App 621, 625; 468 NW2d 307 (1991). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *Schutte, supra* at 721. Appellate review of allegedly improper conduct is precluded if the defendant fails to timely and specifically object, unless an objection could not have cured the error or a failure to review the issue would result in a miscarriage of justice. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

1

First, Rodriguez claims that the prosecutor improperly diminished the people's burden of proof and shifted the burden of proof to Rodriguez by stating, during her opening statement, that the grand jury had conducted a "several month long investigation" that led to the indictments in this case and that she would ask the jury to confirm what the citizens grand jury has already found. However, the trial court's curative instruction, and its directive to strike the statements, were sufficient to cure any prejudicial effect of the prosecutor's comments. *People v Bahoda*, 448 Mich 261, 281; 531 NW2d 659 (1995). Moreover, any challenge to the prosecutor's remarks, including those during closing argument, is negated by the trial court's final jury instructions that Rodriguez was pre-

sumed innocent and that the prosecution had the burden of proving Rodriguez guilty beyond a reasonable doubt. *People v Curry*, 175 Mich App 33, 44-45; 437 NW2d 310 (1989).

2

Second, Rodriguez argues that the prosecutor improperly vouched for the credibility of prosecution witness Potter when she refreshed his recollection of prior statements made to her and other police officers. A prosecutor may not vouch for the credibility of a witness by implying that the prosecution has some special knowledge that the witness is testifying truthfully. *Bahoda, supra* at 276. At one point, the trial court directly responded to the challenged comments by indicating that the prosecutor should proceed without making such comments. The trial court's response was sufficient to cure the prejudicial effect of the prosecutor's error. Further, the trial court's final jury instructions informed the members of the jury that it was their duty to determine the credibility of the witnesses.

We find no merit in Rodriguez' argument that the prosecutor committed misconduct during closing argument when she "explicitly used her own integrity and that of one of the officers-in-charge to support Potter's credibility." A review of the prosecutor's remarks in context reveals that she was not vouching for Potter's credibility, but instead merely responding to defense attorneys' attack on Potter's credibility.

3

Third, Rodriguez argues that the prosecutor improperly denigrated defense counsel during closing

argument. Rodriguez raised no objection to the remarks at trial. Unpreserved issues are reviewed for plain error that affect substantial rights. *Carines, supra* at 763-764, 774.

A review of the remarks in context reflects no plain error affecting Rodriguez' substantial rights. The comments responded to defense argument, and any prejudicial effect could have been cured by an appropriate instruction. *Stanaway, supra* at 687. Any claim of error based on cumulative misconduct also fails.

G

Finally, Rodriguez argues that he was denied his right to a speedy trial. The record shows that defendants caused much of the delay in this case and that they waived their right to a speedy trial. A defendant may not claim error regarding an issue on appeal where his lawyer deemed the action proper at trial or otherwise acquiesced. *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995).

III

DOCKET NO. 210561

A

Porter first argues that he was denied a fair trial on the basis of prosecutorial misconduct. We disagree. The test for prosecutorial misconduct is whether a defendant was denied his right to a fair and impartial trial. *Paquette, supra* at 342.

Porter claims that the prosecutor improperly bolstered the credibility of several prosecution witnesses. We disagree.

Porter contends that the prosecutor's repeated references, in comments and during direct examination, to Potter's plea agreement and his promise of truthfulness, improperly bolstered Potter's testimony. Porter argues that the prosecutor repeatedly "impeached" or "refreshed" Potter's testimony by referencing prior out-of-court statements made to her and Detective James Lalone, which suggested that she had special knowledge that Potter was testifying truthfully. Likewise, with respect to another witness, Porter asserts that the prosecutor referred to the witness' testimony in other proceedings, implying that he had testified truthfully because otherwise he would have been charged with perjury. Porter concedes that if the prosecutor's vouching were limited to these two witnesses, there would be no prejudicial error. However, he argues that, coupled with improper impeachment or "refreshing" of several other witnesses' testimony by references to their out-of-court statements to her, the prosecutor's misconduct requires reversal. We disagree.

Although the introduction of an accomplice witness' promise of truthfulness is not necessarily error, it is error mandating reversal if used by the prosecutor to suggest that the government has some special knowledge that the witness is testifying truthfully. *People v Enos*, 168 Mich App 490, 492; 425 NW2d 104 (1988). Viewing the prosecutor's remarks in context, we are persuaded that the prosecutor's comments and

questioning in this case do not rise to the level of error requiring reversal. *Bahoda, supra* at 276-277.

Any party may attack the credibility of a witness. MRE 607. MRE 613 addresses the manner of impeachment and provides:

> (a) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.
>
> (b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

Under MRE 613, subject to certain restrictions, a witness may be examined concerning a prior inconsistent statement for impeachment purposes. *People v Dale Williams*, 191 Mich App 269, 274-275; 477 NW2d 877 (1991). Although Porter claims that nothing in MRE 613 requires that the witness be reminded of the place and the people to whom a prior statement was made, this Court has interpreted the rule as requiring a proper foundation. When a party attempts to impeach a witness or refresh the witness' memory with a prior inconsistent statement made by that witness, a proper foundation must be laid by questioning the witness concerning the time and place of the statement and the person to whom it was allegedly made. *People v Barnett*, 165 Mich App 311, 315; 418

NW2d 445 (1987); *People v Claybon,* 124 Mich App 385, 399-400; 335 NW2d 493 (1983).

The prosecutor's questions were in keeping with laying a proper foundation under MRE 613. Although the prosecutor failed to elicit the time and place of the prior inconsistent statement, we find no indication that the prosecutor thereby vouched for the credibility of the witnesses in referencing the statements made to her.

In addition, Porter claims that because of the prosecutor's references to out-of-court statements made to her, the prosecutor improperly injected herself into the trial as a witness, whom the defense could not cross-examine. Given that the witnesses did not deny that they made the statements in question, the prosecutor's questioning functioned more like "refreshment" than "impeachment," and in this case, extrinsic evidence of the prior inconsistent statement was unnecessary. See *Claybon, supra* at 400 (prosecutor's preliminary questions were for refreshment purposes). Under these circumstances, we find no error requiring reversal.

Porter argues that the prosecutor improperly placed the prestige of the police behind the contention that Porter was guilty by eliciting testimony from Detective Lalone that suggested that the prosecution's witnesses were telling the truth because their testimony about Porter's characteristics and activities dovetailed with his experiences of enforcers or bodyguards in the drug world. We find no misconduct in this regard. The prosecutor's elicitation of Lalone's testimony merely supported the contention that Porter acted as an enforcer for Rodriguez.

2

Porter claims, as did Rodriguez, that the prosecutor intimidated defense witness Proden into invoking the Fifth Amendment, driving him from the witness stand and thereby depriving Porter of his right to compulsory process under the federal and state constitutions. As discussed with respect to Rodriguez in part II D, *supra* at 25-26, Porter is not entitled to a new trial on this basis.

B

Porter next contends that the trial court erred in allowing Detective Lalone to give expert testimony that Porter's actions were consistent with those of a bodyguard because it amounted to inadmissible drug profile testimony that was used as substantive evidence to show that Porter participated in the conspiracy as a "bodyguard" or "enforcer." Because Porter failed to preserve this issue, we review it for plain error affecting substantial rights. *Carines, supra* at 763-764. We find no error requiring reversal.

Contrary to Porter's claim, Detective Lalone's testimony was admissible as expert testimony. Detective Lalone's testimony was not offered as substantive evidence of Porter's guilt, but was properly offered as background or modus operandi evidence. *Charles Williams, supra* at 320-321. Further, various witnesses provided ample evidence that Porter, acting as a bodyguard for Rodriguez, participated in the conspiracy to deliver cocaine. *Id.* Regardless, Porter has failed to show that the alleged error affected his substantial rights, because any error pertaining to the admission of Detective Lalone's testimony was harm-

less in light of the nature and effect of the other evidence, which overwhelmingly established that Porter conspired with Rodriguez and Potter to deliver cocaine.

C

Porter next argues that the cumulative effect of the alleged errors denied him a fair trial. Having found no single error, we conclude that Porter was not denied a fair trial because of the cumulative effect of multiple errors.

D

Porter next argues that the trial court abused its discretion by declining to depart downward from the mandatory minimum sentence. We disagree. We find no abuse of discretion in the court's determination that there were not substantial and compelling reasons to depart from Porter's minimum sentence of twenty years' imprisonment for conspiracy to possess with intent to deliver 225 or more but less than 650 grams of a mixture containing cocaine, MCL 750.157(a), 333.7401(2)(a)(ii). *People v Fields*, 448 Mich 58, 77-78; 528 NW2d 176 (1995).

The record supports the trial court's finding that Porter was Rodriguez' associate in the conspiracy to deliver cocaine and Porter was an active participant in the conspiracy. There was ample testimony that Porter carried a gun and acted as an "enforcer." Porter's prior criminal record, while lacking "any street drug-related offenses," does not support mitigation of the mandatory minimum sentence. We find no abuse of discretion.

E

Porter next argues that he was denied the effective assistance of counsel in two regards. A claim of ineffective assistance of counsel should be raised by a motion for a new trial or an evidentiary hearing. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Because Porter failed to move for a new trial or an evidentiary hearing with regard to his claim, review is limited to mistakes apparent on the record. *People v Armendarez*, 188 Mich App 61, 73-74; 468 NW2d 893 (1991).

First, Porter claims that his then defense counsel, William Mitchell, III, was ineffective as a result of counsel's failure to convey a tentative plea bargain that had been offered by the prosecution in December 1994. However, appellate relief is foreclosed because the existing record does not disclose what information or advice, if any, defendant received regarding a prior plea offer. *Id.*

Second, Porter claims, as did Rodriguez, that he was denied the effective assistance of counsel by counsel's failure to object to Chopski's testimony that Porter told her that Rodriguez was "the biggest drug dealer in Oakland County." As discussed with regard to Rodriguez' same claim, part II E, *supra* at 27-29, Porter's statement to Chopski was against Porter's penal interest because it served to incriminate him also, insofar as he was charged as a coconspirator in Rodriguez' drug trafficking. Because we find no error in the admission of the testimony, Porter's ineffective assistance claim is without merit.

F

Porter next argues, as did Rodriguez, that he was denied his due process right to a speedy trial where there was a delay of more than three years from the time of the indictment or arrest to the beginning of trial. As discussed with regard to Rodriguez' case in part II G, *supra* at 32, because Porter waived his speedy trial right, this claim is without merit.

G

Porter next argues, as Rodriguez did, that he is entitled to a new trial because he was deprived of due process of law, the right to compulsory process for obtaining witnesses in his favor, and the right to present a defense because the trial court failed to compel the prosecutor to grant immunity to Proden. We find no error, as discussed in part II D, *supra* at 25-26, with respect to the similar claim of Rodriguez.

H

Porter next argues, as did Rodriguez, that the trial court's jury instructions concerning the offense of conspiracy were erroneous because they predetermined the dispositive element of conspiracy. He claims that the trial court effectively directed a verdict and that he is therefore entitled to a new trial. We disagree.

As previously discussed in part II B, *supra* at 22-23, with regard to Rodriguez' same claim, the jury instructions set forth the elements of the offense of conspiracy and fairly presented the issues to be tried. The instructions sufficiently protected Porter's rights.

I

Finally, Porter argues that he was denied a fair trial on the basis of prosecutorial misconduct when the prosecutor referred to defense counsel's explanation of "not guilty" as a "cop out," which was intended to give the jury "an easy way out." Further, the prosecutor improperly called the defense "smoke and mirrors."

Porter was not denied a fair trial on the basis of prosecutorial misconduct. As previously discussed with regard to a similar claim by Rodriguez in part II F 3, *supra* at 31-32, the prosecutor's challenged remarks during closing argument did not constitute misconduct. Accordingly, Porter's claim of ineffective assistance on this basis is also without merit.

Affirmed.