*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIAM RUSSELL WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
December 26, 2019

No. 344212
Tuscola Circuit Court
LC No. 17-014136-FC

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his convictions by a jury of assault with intent to murder (AWIM), MCL 750.83; making a false statement to a peace officer about a criminal investigation, MCL 750.479c(2)(d); and four counts of making a false police report of a felony, MCL 750.411a(1)(b). The trial court sentenced him to concurrent terms of 40 to 80 years' imprisonment for AWIM, and 32 to 48 months' imprisonment for each of the remaining five convictions. We affirm.

Defendant's convictions arose from his bludgeoning of his wife, CW, with an axe as she lay in bed, and his subsequent claims to the police that an intruder had committed the act. CW was left with longstanding brain damage as a result of the attack. Defendant later admitted to the police that he was the perpetrator, and at trial defense counsel conceded guilt on the five lesser offenses, but argued with regard to the AWIM charge, that defendant should be convicted instead of assault with intent to do great bodily harm. It was elicited at trial that defendant had been siphoning household money to a woman, SS, for almost two years, and hoped to be in a romantic relationship with her.

## I. MITIGATION JURY INSTRUCTION

Defendant contends that reversal of his AWIM conviction is required because the trial court erroneously declined the request to give M Crim JI 17.4, the mitigating-circumstances instruction, to the jury. This instruction provides that a defendant may not be convicted of AWIM if the offense would have been heat-of-passion voluntary manslaughter had the victim died.

-1-

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007); see also *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

MCR 2.512(D)(2) states:

> Pertinent portions of the instructions approved by the Committee on Model Civil Jury Instructions or the Committee on Model Criminal Jury Instructions or a predecessor committee must be given in each action in which jury instructions are given if

> (a) they are applicable,

> (b) they accurately state the applicable law, and

> (c) they are requested by a party.

A defendant charged with AWIM is entitled to a mitigating-circumstances instruction if there is "evidence that [the] defendant acted in the heat of passion, which was caused by something that would create such a state in an ordinary person." *People v Rosa*, 322 Mich App 726, 740; 913 NW2d 392 (2018). The *Rosa* Court cited *People v Pouncey*, 437 Mich 382; 471 NW2d 346 (1991), for guidance in assessing whether the instruction was appropriate. See *Rosa*, 322 Mich App at 740. In *Pouncey*, 437 Mich at 390, the Court stated:

> The determination of what is reasonable provocation is a question of fact for the factfinder. However, the judge does play a substantial role. The judge furnishes the standard of what constitutes adequate provocation, i.e., that provocation which would cause a reasonable person to act out of passion rather than reason. When, as a matter of law, no reasonable jury could find that the provocation was adequate, the judge may exclude evidence of the provocation. [Citations omitted.]

In *Pouncey*, *id*. at 384 & n 1, the decedent physically threatened the defendant, and called him various derogatory names. There was a "verbal fracas," but no physical contact of any kind before the killing. *Id*. at 391. Another person present had to hold the decedent back from walking toward the defendant, and there was evidence that the decedent had balled-up fists. *Id*. at 384-385 & n 2. The Court ruled that "[t]he judge was absolutely correct in ruling that as a matter of law there was insufficient evidence to establish an adequate provocation." *Id*. at 391-392. The Court noted that "[t]he law cannot countenance the loss of self-control; rather, it must encourage people to control their passions." *Id*. at 389.

In the present case, defendant, at one point, stated that CW "held up the axe," and he "grabbed it from her." At another point, however, he stated that CW "grabbed for" the axe, but he got to it first. A short time later, he said, "She said something about I'll get this axe after you. So I went and grabbed it and then went stupid." Later still, he said that CW lay "back down" on the bed, and "then I grabbed [the axe] and just went boom." He said, "I grabbed the axe like this, it was up against the wall and I went—" At no time did defendant state that CW actually swung

the axe at him. In addition, he admitted that he struck her *while she was lying in bed*. These facts are analogous to *Pouncey* in that defendant was never dealing with actual physical contact. This is not a situation in which a reasonable person would act out of passion instead of reason. *Id*. at 390. The two argued, CW allegedly stated that she should go after defendant with an axe, and she lay back on the bed. No matter whether CW held the axe or not, defendant admitted that CW had never actually left the bed during the incident, but had only "sat up in the bed[.]" The law does not "countenance" a loss of control in such a situation. *Id*. at 389.[1] The trial court did not abuse its discretion by failing to give M Crim JI 17.4. See *People v Mitchell*, 301 Mich App 282, 288; 835 NW2d 615 (2013),

## II. PROSECUTORIAL ERROR

Defendant contends that the prosecutor improperly informed the jurors during his rebuttal closing argument that a defendant's intent during an assault is determined solely on the basis of the nature of the attack, and that this denied defendant a fair trial. This Court reviews claims of prosecutorial error to determine whether "the prosecutor committed errors during the course of trial that deprived [the] defendant of a fair and impartial trial." *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015).

During the challenged comments, the prosecutor provided examples of lesser attacks that might constitute assault with intent to do great bodily harm, and then argued that the attack here, involving an axe wielded with great force against another's head, was of a different caliber. As stated in *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002), a prosecutor's remarks are to be viewed in context. "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*. A prosecutor is allowed to respond to arguments made by defense counsel. See, generally, *id*. at 31. In addition, a defendant's intent may be inferred from the nature of an attack. *People v Brown*, 267 Mich App 141, 149 n 5; 703 NW2d 230 (2005). The prosecutor, in giving the examples to which defendant takes exception on appeal, was emphasizing this principle from *Brown*, and countering defense counsel's argument in *his* closing argument that defendant had only the intent to inflict great bodily harm and not the intent to kill. Consistent with this, the court properly instructed the jurors that "[t]he defendant's intent may be proved by what he said, what he did, how he did it or by any other facts and circumstances in evidence." The court properly instructed the jurors that the lawyers' arguments were meant to help the jurors understand the legal theories, and the prosecutor's theory of the case was that the nature of

---

[1] Defendant cites *People v Mitchell*, 301 Mich App 282; 835 NW2d 615 (2013), in support of his argument. But in *Mitchell* the victim had not only threatened the defendant and used profanity, but had *actually hit him in the eye* with a baseball bat three or four times. *Id*. at 287. Defendant also cites *Maher v People*, 10 Mich 212 (1862), implied overruling on other grounds recognized in *People v Sullivan*, 231 Mich App 510, 520 n 1; 586 NW2d 578 (1998), aff'd 461 Mich 992 (2000), but that case involved a husband finding out about his wife's adultery, see *Maher*, 10 Mich at 224-225, which did not occur here.

the assault evidenced an intent to kill. Under all these circumstances, and reading the remarks in context, defendant has not established that the prosecutor's comments denied him a fair trial. *Cooper*, 309 Mich App at 88.[2]

## III. SCORING OF OFFENSE VARIABLES

Defendant argues that Offense Variables (OVs) 1, 2, 5, 10, and 7 of the sentencing guidelines were misscored.[3]

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded in part by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

Defendant received 25 points for OV 1, "aggravated use of weapon[.]" See MCL 777.31(1). Twenty-five points are warranted under this variable if "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon[.]" MCL 777.31(1)(a). Defendant contends that OV 1 should have been scored at 10 points for the victim's having been "touched by any other type of weapon[.]" See MCL 777.31(1)(d). He cites the testimony of Dr. Nicholas Nunnally, D.O., who stated, with regard to CW's head wound, "It's not a laceration. It's not a stabbing wound. It's not a knife injury." Dr. Nunnally also stated that CW incurred "blows" to the skull. Defendant contends that this testimony establishes that CW was not "cut or stabbed with a knife or other cutting or stabbing weapon," MCL 777.31(1)(a), but was instead hit with a hammer-like weapon.

MCL 777.31 does not define the word "cut," so a dictionary may be used to ascertain its generally accepted meaning. *People v Lewis*, 302 Mich App 338, 342; 839 NW2d 37 (2013). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines the verb "cut," in part, as "to penetrate with or as if with an edged instrument," or "to strike sharply with a cutting effect[.]" The weapon in question was described as a "splitting maul" or "axe," and defendant said that he thought CW had been "chopping . . . logs" with it. One of the emergency medical technicians who treated CW described a "laceration" on CW's head. A paramedic also described a "laceration" on CW's head. Even if CW's skull was partially crushed from blunt force as described by Dr. Nunnally, she also had her *skin* "penetrate[d] . . . with . . . an edged

---

[2] Defense counsel objected to the comments. To the extent that defendant is arguing that his attorney should have raised a further objection to the comments, any such objection would have been futile because the comments were allowable. As such, no ineffective assistance is apparent. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

[3] We decline the prosecutor's request to treat this issue as waived. See, e.g., *People v Greene*, 477 Mich 1129, 1130; 730 NW2d 478 (2007).

instrument[.]" *Id*. Clearly, the axe had a sharp edge and was a "cutting . . . weapon," MCL 777.31(1)(a), that is normally used to split logs. No error occurred with regard to the scoring of OV 1.

Defendant also argues against the assessment of five points for OV 2, "lethal potential of weapon possessed or used[.]" MCL 777.32. Five points are appropriate for OV 2 if "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon[.]" MCL 777.32(1)(d). Defendant contends that he should have been assigned one point under OV 2 for possessing "any other potentially lethal weapon," see MCL 777.32(1)(e), because the axe was merely a "wedge" that causes blunt-force trauma. As noted, however, the axe had a sharp edge and was, indeed, a type of cutting weapon. OV 2 was properly scored.

Fifteen points were scored for OV 5, "psychological injury to member of victim's family," MCL 777.35, which is appropriate for this variable if "[s]erious psychological injury requiring professional treatment occurred to a victim's family[.]" MCL 777.35(1)(a). Zero points are appropriate if "[n]o serious psychological injury requiring professional treatment occurred to a victim's family[.]" MCL 777.35(1)(b). MCL 777.35(2) states, "Score 15 points if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." In *People v Calloway*, 500 Mich 180, 185; 895 NW2d 165 (2017), the Court stated, "At first blush, the second subsection of MCL 777.35 appears to contradict the first concerning whether professional treatment is required for points to be assessed. However, the more specific second subsection is clearly intended as a further explication of the circumstances justifying a 15-point score." In addition, the *Calloway* Court defined " 'serious' . . . as 'having important or dangerous possible consequences.' " *Id*. at 186 (citation omitted).

At sentencing, CW's sister talked about the impact on CW from the assault, such as her "impaired cognitive skills," and her need to rely on others to live her life. She stated:

> [CW's] family has been traumatized by [defendant's] action. We had no choice or influence in the decision to irreparably injure [CW], the nightmare of seeing [CW] in [the intensive care unit] after extensive surgery and then witnessing the slow progress of her recovery. [CW's] nieces feel so betrayed as [defendant] was once a beloved uncle and trusted him implicitly. It has shaken their world and made them less trusting of others.
>
> My life has been turned upside down as I've been thrown into her care and safety. At this stage of my life, I should be planning a great vacation and not taking care of her needs. Each time I leave her, the profound sadness of her future overwhelms me. This is not the retirement I had planned.

In *Calloway*, *id*. at 189, the Court upheld a 15-point score for OV 5 because of evidence that the murder of the victim had had a " 'tremendous, traumatic effect' " on the victim's family; that the murder would " 'change them for the rest of their lives;' " and that the victim's stepfather had thought about the murder every day, and would likely continue to do so indefinitely. Similar to *Calloway*, CW's sister spoke about the family's having been "traumatized," and about being "overwhelm[ed]" by the sadness of CW's future "[e]ach time" she visits CW. It is also pertinent that CW's nieces had their "world" "shaken," and had become

less trusting of others. The evidence was sufficient to show that psychological injuries having important possible consequences were inflicted upon the victim's family; no scoring error is apparent.

Defendant received 10 points for OV 10, "exploitation of vulnerable victim[.]" MCL 777.40. MCL 777.40(1)(b) provides for a score of 10 points for OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status[.]" MCL 777.40 further states, in part:

(2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability.

(3) As used in this section:

* * *

(b) "Exploit" means to manipulate a victim for selfish or unethical purposes. . . .

(c) "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.[4]

Defendant contends that while it is true that he and CW were in a domestic relationship, there was no evidence that he exploited this relationship when committing the sentencing offense of AWIM. Defendant states that he "assaulted [CW] because she threatened him and he 'lost it.' There was simply no exploitation or manipulation demonstrated in the record."

A victim may be "vulnerable" on the basis of a domestic relationship with the perpetrator. *People v Huston*, 489 Mich 451, 464-465; 802 NW2d 261 (2011). Here, CW was vulnerable because, at the time of the assault, she was lying on her bed, around 3:00 a.m., in the home that she shared with defendant, her husband. Defendant "manipulate[d]" CW in her vulnerable state or "manipulate[d]" the domestic relationship, see MCL 777.40(1)(b) and MCL 777.40(3)(b), because he used his free rein in the home and his marital status to gain easy access to CW, and thereby assault her. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "manipulate," in part, as "to control or play upon by artful, unfair, or insidious means esp. to one's own advantage[.]" Defendant unfairly attacked CW for unethical purposes as she lay in her own bedroom in the marital home. The scoring of OV 10 was proper.

Defendant received a total of 175 OV points and 20 prior record variable (PRV) points. This put him in cell C-VI of the sentencing grid. MCL 777.62. The last OV to be analyzed is OV 7, for which defendant received 50 points. Even if 50 points are deducted from defendant's

---

[4] MCL 777.40 was amended by 2018 PA 652, effective March 28, 2019, but the amendment does not apply to this case.

OV total, he would *still* be in cell C-VI of the sentencing grid. MCL 777.62. As such, we decline to reach the argument about OV 7.

## IV. REASONABLENESS OF SENTENCE

Defendant contends that the trial court imposed an unreasonable sentence, and failed to provide adequate reasons for the extent of its departure from the guidelines range.

A sentence departing from the guidelines range is reviewed by this Court for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted).

The sentencing guidelines produced a range for defendant's minimum AWIM sentence of 135 to 225 months' imprisonment. The court imposed a sentence of 40 to 80 years' imprisonment, thereby exceeding the guidelines by 255 months (21.25 years). The court issued a detailed and lengthy statement at sentencing, but defendant contends that the court justified its departure by using factors—brutality, intent, and the false claim of a home invasion—that were already accounted for by the scoring of the guidelines. However, while brutality, intent, and the false claim of a home invasion were encompassed by the guidelines and the nature of the offense, a court, in assessing proportionality, is allowed to consider factors that were not considered by the guidelines, or that were not *adequately* considered by the guidelines. *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017).

With regard to brutality in particular, the court emphasized Dr. Nunnally's testimony. Dr. Nunnally testified that this case presented the "single most devastating injury [he had] seen of an object wielded by . . . one person onto another." He described the "force of the energy transferred from the implement to the skull" as "disgustingly impressive." The guidelines accounted for brutality, but the court was, in essence, concluding that they did not account for such an extreme level of brutality. In addition, in conjunction with the issue of intent, the court delineated its belief that defendant chose to retrieve the axe from a different location, and that the weapon had not simply been sitting in CW's bedroom. This was a reasonable inference because defendant's stories about the axe were inconsistent, and his explanation for why CW had an axe in the bedroom was far-fetched.

The court mentioned several other factors not incorporated by the guidelines. The court noted that it was virtually incredible that CW had survived. This was supported by the record, and was not accounted for by the guidelines. The court also emphasized that defendant let CW sit in a pool of blood for over half a day without even checking whether she was dead. This

factor was not accounted for by the guidelines. Nor was defendant's lack of remorse.[5] See *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995) (noting that a lack of remorse can be considered at sentencing). While it is true that the court, in mentioning defendant's lack of remorse, partly relied on an allegedly contested divorce, and this contested divorce is not part of the record, the lack of remorse was evident from other parts of the record. The court also noted that while CW was lying on the bed bleeding, defendant went to see SS to give her money. This, too, was not considered by the guidelines.

Defendant contends that "[t]he judge's concern for community safety . . . was inconsistent with the record" because defendant had no criminal record before the present incident. However, the court was not overtly expressing a concern for community *safety*, but mentioned that the victim, her family, and the community deserved the "peace of mind" that would come from the long sentence. Viewed in the context of its surrounding comments, the court's comment is best understood as a belief that an exceptionally egregious crime should result in an exceptionally long punishment—a belief that meshes with the principle of proportionality. Defendant additionally contends that the court focused only on the seriousness of the crime, but not on the seriousness of the offender, because his lack of a prior record should have resulted in a shorter sentence. But the court did consider "the background of the offender," see *Milbourn*, 435 Mich at 651, and *Walden*, 319 Mich App at 352, when it mentioned defendant's misuse of the family finances. And the court did not, in fact, sentence defendant to the maximum possible term for AWIM. See MCL 750.83 (stating that the offense is "punishable by imprisonment in the state prison for life or any number of years"). Cf. *Milbourn*, 435 Mich at 668.

The guidelines are merely advisory. *Steanhouse*, 500 Mich at 472-473. The guidelines are highly relevant and must be considered at sentencing, but "the key test [in reviewing a sentence] is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range[.]" *Id*. at 474-475 (quotation marks and citation omitted). Defendant's conduct was extremely serious. Defendant depleted family finances by attempting to woo SS, bludgeoned CW twice and with extreme force as she lay in bed, left CW alive and gravely injured in her bed while he went about his day and gave more money to SS, and concocted a story about the attack on CW. Dr. Moses C. Jones, Jr., M.D., testified that injuries such as CW's would normally result in death. The trial court did not abuse its discretion in sentencing defendant for AWIM. And contrary to defendant's assertion, the trial court, by citing many relevant factors, "adequately explain[ed] why" the sentence it imposed was "more proportionate than a different sentence within the guidelines would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017).

---

[5] Defendant argues that a lack of remorse *was* accounted for by the OV scoring, but fails to indicate how.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher