# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 16, 2017

Plaintiff-Appellee,

v

No. 331190
Oakland Circuit Court

DAVID KENT CHAPLIN,

LC No. 2014-252692-FH

Defendant-Appellant.

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(d) (sexual penetration with a person who is related to defendant by blood or affinity to the third degree) and fourth-degree criminal sexual conduct (CSC IV), MCL 750.520e(1)(d) (sexual contact with a person who is related to defendant by blood or affinity to the third degree). Defendant was sentenced to 55 months to 15 years' imprisonment for the CSC III conviction and 12 months to 2 years' imprisonment for the CSC IV conviction. We affirm.

The instant case arose from defendant's sexual abuse of his stepdaughter, S.A., from the time she was in the eighth grade through her senior year in high school. Defendant married the complainant's mother, Beth Chaplin, in the summer of 2008, when S.A. was about 12 years old. S.A. lived with defendant and Beth in a house in Oakland Township. The complainant testified at trial that defendant began inappropriately touching her when she was in the eighth grade. He would put his arm between her breasts as they sat together on the couch. The sexual abuse progressed to touching and squeezing her buttocks and touching her breasts both over and under her clothes. By her twelfth grade year, defendant had engaged in multiple acts of digital penetration and cunnilingus with S.A. S.A. further testified that the sexual assaults usually occurred at home while her mother was at work or had gone to bed for the night. In 2014, S.A. told her boyfriend about the abuse, which ultimately led to a police investigation. The case proceeded to trial, and defendant was convicted of one count each of CSC III and CSC IV, which he now appeals.

## I. ADMISSIBILITY OF EVIDENCE

Defendant argues that the trial court abused its discretion in denying his request to introduce evidence, including expert testimony. We disagree.

-1-

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). We also review a trial court's decision to admit or exclude expert witness testimony for an abuse of discretion. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). An abuse of discretion occurs if the results are "outside the range of principled outcomes." *Feezel*, 486 Mich at 192 (citation and quotation marks omitted). A decision on a close evidentiary question usually cannot constitute an abuse of discretion. *People v Blackston*, 481 Mich 451, 467; 751 NW2d 408 (2008).

As part of his defense, defendant sought to introduce evidence showing that S.A. had lived with twin stepsisters ("the twins") during the time that they made purportedly false allegations of sexual abuse[1] against over one hundred men, including defendant. He claimed that this evidence was relevant because S.A.'s contact with the twins had taught her how to make allegations of sexual abuse "stick" or, alternatively, showed that she was suggestible regarding sexual matters. He sought to call psychologist Dr. Katherine Okla as an expert witness to testify to S.A.'s suggestibility and familiarity with sexual abuse investigations, among other things. According to defendant, Dr. Okla would testify that the false report of the twins could have caused S.A. to mistakenly attribute sexual abuse to defendant. The trial court denied defendant's request.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Such evidence is generally admissible. MRE 402. We acknowledge that a victim of sexual assault's history of false accusations is relevant in CSC cases. See *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1985) (recognizing that the defendant is permitted to show that the victim has made untrue accusations of sexual assault before).

Here, it was the twins, not S.A., who allegedly made false claims of sexual abuse. The trial court properly determined that evidence of their prior allegations was not relevant and, therefore, inadmissible. Specifically, evidence of the false report of the twins was not relevant where such evidence did not make it more probable that S.A. would lie about sexual contact with defendant. While it appears from the record that S.A. lived with the twins for a time, there was no indication in the record to suggest that she was unduly influenced by their behavior, particularly with regard to the nature of their sexual abuse allegations. The record also did not yield necessary information regarding S.A.'s relationship with the twins and her feelings about their actions in making sexual abuse allegations.[2] Therefore, where the evidence defendant

---

[1] While the disposition of these allegations is not entirely clear from the record, whether the allegations were in fact false is not determinative in our analysis.

[2] We observe that during the June 3, 2015 motion hearing, when the trial court inquired of defense counsel what exact evidence defendant sought to admit concerning the twins' allegations of sexual abuse, defense counsel informed the trial court that "the gist of [defendant's motion] is not that the twins made false allegations. It is that we believe that the exposure of – and the risk of susceptibility to the complaining witness in this case from her exposure to this highly

sought to admit concerning the twins' prior allegations of sexual abuse (1) was not relevant to the ultimate issue of this case, that being whether defendant sexually assaulted S.A., and (2) did not bear on S.A.'s credibility, it was not an abuse of discretion for the trial court to decline to admit this evidence.

Moreover, MRE 702 permits expert witness testimony when it "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Here, the trial court concluded that an expert witness was not necessary to assist the jury in understanding the evidence or determining the issues. The central issue in the case was S.A.'s credibility. The trial court held that defendant's theory of S.A.'s suggestibility was speculative and, therefore, evidence bearing on that point was not relevant to whether S.A. was being truthful. "Because it is the province of the jury to determine whether a particular witness spoke the truth or fabricated a cock-and-bull story, it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) (internal quotations and citations omitted). "Such comments have no probative value because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Id.* (Citations and internal quotations omitted.) Here, the real purpose of the expert testimony would have been to attack S.A.'s credibility, and would have only served as a distraction to the jury from its ultimate responsibility of assessing credibility. Accordingly, we conclude that the trial court did not abuse its discretion in declining to admit the expert witness evidence.

Defendant also argues that the trial court abused its discretion in granting the prosecution's pretrial motion to admit other acts evidence that defendant's biological daughter brought sexual assault allegations against him in 1993. Defendant concedes in his brief on appeal that the evidence at issue was not introduced at trial. As an initial matter, we agree with the trial court's ruling that the proffered evidence was admissible where it was relevant to (1) defendant's propensity to commit the instant offenses, and (2) S.A.'s credibility. MCL 768.27a; *People v Solloway*, 316 Mich App 174, 193; 891 NW2d 255 (2016). As the trial court recognized, defendant's biological daughter's allegations of sexual abuse bore numerous indicia of similarity to the sexual abuse that S.A. alleged against defendant. We also note that defendant's argument that the proffered evidence was improperly admitted to show defendant's propensity to commit the instant offenses is unavailing, where in *Solloway*, this Court recognized, in pertinent part, as follows:

> Under MCL 768.27a, evidence is relevant, and therefore admissible, when offered to show the defendant's propensity to commit the charged crime. *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012) (indicating that MCL 768.27a permits admission of evidence that would generally not be admitted under MRE 404(b). [*Solloway*, 316 Mich App at 193.]

sexualized environment that she was living in for a long period of time and the allegations that surrounded my client while she lived with him may have had a psychological impact on – on her."

We also disagree with defendant's assertions that the proffered evidence was unreliable and ought to have been excluded pursuant to MRE 403 because (1) the allegations were made in 1993, and (2) defendant's biological daughter recanted the allegations in 2014.[3] A temporal divide alone does not preclude admission of evidence when the other acts are very similar to the charged offenses. See *Solloway*, 316 Mich App at 195 (concluding that, given the similarity of the ages of the victims and the manner in which the defendant sexually assaulted them, admission of other acts evidence was not precluded by the difference of approximately 12 years between the prior act and the charged offense). Moreover, at the time the trial court decided this issue, the prosecution was prepared to present a witness to corroborate defendant's biological daughter's allegations of sexual abuse by defendant. In any event, where the evidence was not presented to the jury, even if we concluded that the trial court's ruling was erroneous, defendant is not entitled to appellate relief on this issue where the trial court's ruling concerning the evidence had no impact on defendant's trial. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) ("A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative.") (quotation marks, footnote and citation omitted).[4]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel at trial. We disagree.

Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Findings of fact are reviewed for clear error, while determinations of constitutional law are reviewed de novo. *Id*. Although defendant filed a motion to remand in this Court on the basis of ineffective assistance of counsel, because the motion was denied,[5] our review of his claim is limited to errors apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

---

[3] The record confirms that the police investigation into defendant's biological daughter's allegations of sexual abuse was not completed because her mother did not cooperate, and there is an indication in the record that defendant's biological daughter recanted the allegations in 2014 after speaking to defendant.

[4] We also note that the trial court properly denied defendant's motion seeking an evidentiary hearing regarding allegations made by the twins and Dr. Okla's proposed testimony. See, e.g., *People v Williams*, 191 Mich App 269, 273-274; 477 NW2d 877 (1991) (observing that an evidentiary hearing to determine the admissibility of evidence regarding prior allegations of sexual assault is not intended to be "utilized as a fishing expedition[.]").

[5] This Court denied defendant's motion to remand. *People v Chaplin*, unpublished order of the Court of Appeals, entered November 23, 2016 (Docket No. 331190).

A defendant claiming that he has been denied the effective assistance of counsel must demonstrate: "(1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial." *People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014) (citation omitted). "'To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.'" *Id.*, quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004) (citation omitted).

First, defendant argues that his trial counsel[6] was ineffective for failing to call character witnesses at trial to testify to his good character. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999) (citation omitted). The defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Here, the prosecution sought to offer evidence of other instances of sexual abuse by defendant, namely the 1993 sexual abuse allegations of his biological daughter. Therefore, calling witnesses to attest to defendant's good character could have opened the door for the prosecution to introduce damaging information about defendant. *People v Vasher*, 449 Mich 494, 503; 537 NW2d 168 (1995) (recognizing that "[o]nce a defendant has placed his character in issue," the prosecution may properly "introduce evidence that the defendant's character is not as impeccable as is claimed."). Defendant provided the affidavits of his proposed character witnesses.[7] Two of the witnesses, both of whom are defendant's nieces, would have testified that defendant was their uncle, had been around them their entire lives, and had never touched them in an inappropriate manner. A third witness, defendant's sister and the mother of one of the other proposed witnesses, also averred that defendant had acted in a caring and appropriate manner toward her daughter. While these witnesses would have provided evidence of defendant's good character, defendant has not overcome the presumption that it was sound trial strategy for trial counsel to exclude these witnesses to prevent the prosecution from introducing evidence that was more damaging to the defense.

Next, defendant argues that his trial counsel was ineffective for allowing a proposed character witness, his sister, to remain in the courtroom during trial in violation of a sequestration order. Consequently, defendant's sister was barred from testifying. It appears from the record that trial counsel did not have defendant's sister leave the courtroom because he had already decided that he would not call her as a witness. Even if we accept defendant's contention that trial counsel erred regarding the sequestration of the witness, defendant has not

---

[6] For clarity of analysis regarding whether defendant was afforded the effective assistance of counsel, in this portion of our opinion we will refer to defendant's counsel in the lower court proceedings as trial counsel.

[7] We note that one of the affidavits is unsigned and not sworn.

shown that the error affected the outcome of the proceedings when the record reflects that trial counsel decided not to pursue calling character witnesses on defendant's behalf.

Finally, defendant asserts that his trial counsel was ineffective for improperly convincing him to waive his right to testify at trial. In support of his claim, defendant contends that he was adamant about testifying at trial. At trial, defendant initially stated that he would testify. When a discussion took place on the record between the trial court, trial counsel and the prosecution regarding whether the prosecution could cross-examine defendant about other acts evidence, defendant left the courtroom briefly and consulted with his counsel, returning to the courtroom to express his decision not to testify. The trial court thoroughly explored the matter of defendant's choice whether to testify, asking defendant several pointed questions to confirm his decision that he had chosen not to testify. At one point, the trial court informed defendant that he could change his mind at any point up until the defense case-in-chief had closed. Rather than supporting defendant's contention that he was coerced into not testifying, the record establishes that defendant was apprised of his right to testify and voluntarily waived that right after considering the consequences of testifying. Therefore, we hold that defendant has failed to establish the factual predicate for his ineffective assistance of counsel claim, *People v Hoag*, 460 Mich 1, 59; 594 NW2d 57 (1999), and cannot demonstrate that trial counsel's performance failed to satisfy an objectively reasonable standard. *Gaines*, 306 Mich App at 300.

## III. SENTENCING

Defendant contends that the trial court erred in assessing 15 points for offense variable (OV) 10 when the evidence did not support a finding that defendant's conduct was predatory. We disagree.

A trial court's factual determinations regarding the scoring of offense variables "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnote and citations omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (Footnote and citation omitted.)

OV 10 addresses the "exploitation of a vulnerable victim." MCL 777.40(1). A trial court must assess 15 points under OV 10 if "[p]redatory conduct was involved." MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a); see also *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008) (recognizing that predatory conduct's "primary purpose" is to cause a "person to suffer from an injurious action or to be deceived.").

Here, the trial court properly concluded from the evidence that defendant's preoffense conduct was predatory. S.A. testified that defendant married her mother when she was about 12 years old. He then established himself as the father figure. S.A. was especially susceptible to defendant's influence as a parental authority because her biological father had died when she was only 5 years old. The record confirms that defendant began engaging in grooming behavior with S.A. S.A. testified that defendant began putting his arm between her breasts as they sat together on the couch. When S.A. would ask defendant why he was doing that, he told her that "he didn't

realize that he was doing that[,]" and defendant nonetheless continued to engage in such behavior. Defendant then moved to touching her breasts and buttocks outside of her clothes and inside of her clothes. These earlier sexual contacts were primarily intended to lower S.A.'s inhibitions. S.A. claimed that defendant progressed to touching her vaginal area, first over her clothes, then under her clothes. Eventually, defendant engaged in multiple acts of digital penetration with S.A. and performed cunnilingus on her. Gradually escalating "less intrusive and less highly sexualized forms of sexual touching[ ]" in order to "desensitiz[e] the victim to future sexual contact[,]" demonstrates an intent to victimize a person. *Steele,* 283 Mich App at 491-492. Moreover, waiting for an opportunity to be alone with a victim in an isolated or secluded location is evidence of preoffense predatory conduct. *People v Ackah-Essien,* 311 Mich App 13, 37; 874 NW2d 172 (2015); *People v Witherspoon,* 257 Mich App 329, 336; 670 NW2d 434 (2003). Defendant isolated S.A. by engaging in sexual assaults when her mother was at work or already in bed. Therefore, we conclude that there was sufficient evidence to support the scoring of OV 10 at 15 points for defendant's predatory conduct.

## IV. FALSE TESTIMONY AND COLLUSION

In a supplemental brief filed in propria persona pursuant to Supreme Court Administrative Order No. 2004–6, Standard 4, defendant argues that witnesses for the prosecution gave false testimony and acted in collusion with the prosecution to effectuate an outcome that deprived defendant of his right to due process. We disagree.

"A due process violation presents a constitutional question that this Court reviews de novo." *People v Smith,* 498 Mich 466, 475; 870 NW2d 299 (2015). Because defendant did not timely and specifically object to the alleged errors below, we review this unpreserved claim for plain error affecting substantial rights. *People v Callon,* 256 Mich App 312, 329; 662 NW2d 501 (2003). Reversal is warranted only when plain error "resulted in the conviction of an actually innocent defendant" or "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of [the] defendant's innocence." *People v Carines,* 460 Mich 750, 763, 774; 597 NW2d 130 (1999) (citation and internal quotation marks omitted).

Defendant alleges numerous instances of false testimony from Officer Gary McClure, Officer John Peters, S.A., and her boyfriend, and he contends that the prosecutor knowingly allowed this false testimony. It is well-established that it offends due process guarantees for the prosecution to secure a conviction through the knowing use of false testimony, and such conviction must be set aside if "the uncorrected false testimony 'could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Smith,* 498 Mich at 475, 476, quoting *Napue v Illinois,* 360 US 264, 271-272; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). The prosecution is obligated to "correct false testimony[.]" *Smith,* 498 Mich at 476 (citations omitted).

Upon close review of each instance of false testimony alleged by defendant in his supplemental brief, we conclude that there is no indication in the record that the witnesses provided false testimony, or that the prosecution knowingly allowed false testimony to remain uncorrected. While there were some inconsistencies in the record evidence, any inconsistencies were the proper subject of impeachment during cross-examination. MRE 607; *People v Rodriguez,* 251 Mich App 10, 34; 650 NW2d 96 (2002). Further, to the extent that the credibility of the witnesses was implicated, their credibility was a question for the jury. See, e.g.,

*People v Lemmon*, 456 Mich 625, 646; 576 NW2d 129 (1998) (recognizing that the fact-finder must evaluate a witness to determine if the witness is telling the truth). Defense counsel was afforded ample opportunity to explore the issues and impeach the credibility of the witnesses, and the jury was tasked with the duty to determine credibility. Accordingly, where the record does not support defendant's allegation of improper conduct by the witnesses or the prosecution, defendant has not established plain error affecting his substantial rights. *Callon*, 256 Mich App at 329.[8]

        Affirmed.


        /s/ Deborah A. Servitto
        /s/ Mark J. Cavanagh
        /s/ Karen M. Fort Hood

---

[8] In his supplemental brief, defendant also argues that trial counsel was ineffective for failing to object during what he characterizes as false testimony by the witnesses. We have reviewed each of defendant's claims, and conclude that his allegations that trial counsel was ineffective are without merit, as defendant has not overcome the presumption that trial counsel acted in accordance with sound trial strategy. *Trakhtenberg*, 493 Mich at 52. To the extent that defendant also asserts that the witnesses engaged in fraud upon the trial court, a close review of the record simply does not support this assertion where there is no indication, other than defendant's unsupported allegations in his supplemental brief, that the witnesses testified untruthfully. The record also does not support defendant's allegations in his supplemental brief that the police engaged in misconduct in any manner during their investigation of defendant, or during their testimony at trial. Finally, where defendant briefly challenges Officer McClure's questioning of S.A. when she first reported the sexual abuse by defendant in 2014, there is no indication in the record that Officer McClure's questioning of S.A. amounted to misconduct or that his testimony at trial was false.