*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SEAN ALEXANDER THOMAS,

Defendant-Appellant.

UNPUBLISHED
August 8, 2019

No. 341727
Wayne Circuit Court
LC No. 16-010601-01-FC

Before: LETICA, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendant, Sean Alexander Thomas, appeals as of right his jury trial convictions of delivery of a controlled substance (fentanyl) causing death, MCL 750.317a, and delivery of less than 50 grams of fentanyl, MCL 333.7401(2)(a)(*iv*). Thomas was sentenced as a fourth-offense habitual offender, MCL 769.12, to 15 to 30 years' imprisonment for delivery of a controlled substance causing death and 10 to 20 years' imprisonment for delivery of less than 50 grams of fentanyl. We affirm.

This case arises from the death of Jennifer Jackson, which was caused by toxicity from acetyl fentanyl, cocaine, and fentanyl. Michael Floyd testified that he purchased what he believed to be cocaine from Thomas. Floyd then returned to his mother's home with Jackson, where he put six lines of the supposed cocaine on a plate. After ingesting one line of cocaine, Floyd passed out. When Floyd woke up, he saw that only three lines of cocaine remained on the plate. He also saw that Jackson was lying "nonresponsive" on his bed. Floyd took Jackson to a friend's house, and the friend called 911 after seeing Jackson's condition. Jackson was dead when emergency medical services arrived.

Westland Police Sergeant Jon Torolski testified that the police searched Floyd's home and confiscated a bag containing a powdery substance as well as a plate that had what appeared to be cocaine residue on it. The substance in the bag was sent to the Michigan State Police Northville Crime Laboratory. Holli Proulx, an expert in the field of controlled substance identification and analysis, tested a substance submitted by the Westland Police Department and determined that it was fentanyl.

## I. SUFFICIENCY OF THE EVIDENCE

Thomas argues that there was insufficient evidence to convict him of delivery of a controlled substance causing death and delivery of less than 50 grams of fentanyl.[1] We disagree.

This Court reviews sufficiency of the evidence claims de novo, considering "the trial evidence in a light most favorable to the prosecution [to] determine whether a rational trier of fact could have found that all the elements of the offense were proved beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Furthermore, this Court "must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *Id.* "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* (quotation marks and citation omitted).

In order to convict a defendant of delivery of a controlled substance causing death, the prosecution must prove five elements: "(1) delivery to another person, (2) of a schedule 1 or 2 controlled substance (excluding marijuana), (3) with intent to deliver a controlled substance as proscribed by MCL 333.7401, (4) consumption of the controlled substance by a person, and (5) death that results from the consumption of the controlled substance." *People v McBurrows*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157200); slip op at 9. With respect to the third element, the defendant must have knowledge that he or she is delivering a controlled substance. See *People v Collins*, 298 Mich App 458, 462; 828 NW2d 392 (2012) (referring to elements of MCL 333.7401). Fentanyl is a Schedule 2 substance. MCL 333.7214(b).

Thomas first argues that the prosecution failed to establish where the substance tested by Proulx came from. Although there was no direct evidence identifying the tested sample as the substance seized from Floyd's home or showing that the seized substance was the "cocaine" sold by Thomas, reasonable inferences arising from the circumstantial evidence support that conclusion. Floyd testified that he put the "cocaine" he purchased from Thomas on a plate in his bedroom. Sergeant Torolski testified that the police searched Floyd's bedroom and recovered a black plate with residue of what appeared to be cocaine on it and a bag of suspected cocaine.

---

[1] Thomas also presents his first claim of error as a challenge concerning the great weight of the evidence. See *People v Bosca*, 310 Mich App 1, 12; 871 NW2d 307 (2015) (explaining that a great-weight issue considers "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand") (quotation marks and citation omitted). Although Thomas cites controlling law regarding great-weight challenges, he does not present any specific arguments regarding this alternative theory and, instead, couches his argument only in terms of whether the evidence was sufficient to establish his guilt beyond a reasonable doubt. Because Thomas failed to argue the merits of his alternative great-weight theory, we consider the issue abandoned. *People v Coy*, 258 Mich App 1, 19-20; 669 NW2d 831 (2003).

The bag of powdery substance seized from Floyd's home was sent to the Northville Crime Laboratory for identification. Proulx tested a substance submitted by the Westland Police Department and determined that it was fentanyl, i.e., the very substance discovered in Jackson's body during the autopsy. Thus, by considering the testimony of Sergeant Torolski, Floyd, and Proulx together, the jury could have determined that Thomas sold Floyd the fentanyl that was later seized from Floyd's home and tested by Proulx.

Next, Thomas argues that the prosecution failed to establish beyond a reasonable doubt that Jackson actually consumed any drugs while at Floyd's house. Floyd testified that he divided the "cocaine" into six lines and ingested one line before passing out. There were only three lines left on the plate when he woke up. There is no indication anyone other than Jackson was in the room with Floyd during the period preceding Jackson's death. Furthermore, the substance seized from Floyd's home was determined to be fentanyl, and a toxicology report indicated that Jackson had lethal levels of fentanyl in her system. Thus, the jury could reasonably infer that Jackson ingested two lines of the substance Floyd purchased from Thomas after Floyd passed out.

Finally, Thomas argues that the prosecution failed to establish beyond a reasonable doubt that the drugs sold by Thomas were the cause, or a cause, of Jackson's death. But as previously discussed, the jury could have inferred that Thomas sold Floyd fentanyl. Jackson's cause of death was toxicity from acetyl fentanyl, cocaine, and fentanyl. While the assistant medical examiner testified that the cocaine alone could have caused an overdose, he also indicated that the amount of fentanyl found in Jackson's system was 120 ng/mL and that 3 ng/mL is enough to cause death. Thus, the jury appears to have determined that the fentanyl, and by extension Thomas, caused Jackson's death, which was a determination supported by the assistant medical examiner's testimony.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Thomas argues his trial counsel was ineffective for failing to object when the prosecution presented other-acts evidence. In his statement to the police, Thomas admitted that he purchased the "cocaine" he sold to Floyd from a drug dealer earlier that morning. Thomas also admitted that when he took the remaining substance back to the drug dealer, the dealer said he gave Thomas the "wrong product," indicating that it was "white heroin instead of cocaine[.]" On appeal, Thomas argues that defense counsel provided ineffective assistance when he failed to object because the evidence was inadmissible under MRE 404(b)(1) and admitted without the notice required by MRE 404(b)(2). We disagree.

"[D]efendant's claim of ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014) (quotation marks and citation omitted). Findings of fact are reviewed for clear error, while questions of law are reviewed de novo. *Id*. at 67-68. Because Thomas did not move for a new trial or evidentiary

hearing below, and this Court denied Thomas's motion to remand,[2] our review is limited to mistakes apparent from the record. *Id*. at 68.

The Michigan Constitution and the Sixth Amendment to the United States Constitution both guarantee the "right to the effective assistance of counsel." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016) (citations omitted). To succeed on an ineffective assistance of counsel claim, Thomas must demonstrate that "(1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *Lane*, 308 Mich App at 68. This Court presumes that defense counsel provided effective assistance. *Id*. Thomas was only prejudiced if there is a reasonable probability that the result of his trial would have been different without counsel's errors. *Id*.

Thomas has not demonstrated that defense counsel's failure to object to the other-acts evidence fell below an objective standard of reasonableness, even assuming that it is accurately characterized as such. Regardless of its admissibility, defense counsel may have wanted the jury to know that Thomas believed he had purchased cocaine and did not realize he sold fentanyl to Floyd, thereby mitigating Thomas's moral culpability in Jackson's death. Although Thomas's mistake as to the nature of the controlled substance he delivered was not a legal defense, see *People v Mass*, 464 Mich 615, 627; 628 NW2d 540 (2001) (holding that delivery of a controlled substance is a general intent crime); *People v Maleski*, 220 Mich App 518, 521-522; 560 NW2d 71 (1996) ("[G]eneral intent crimes involve merely the intent to do the physical act), superseded in part on other grounds by MCL 768.37, defense counsel could have decided, as a matter of strategy, that the jury would be more likely to acquit Thomas if it believed that his delivery of fentanyl—as opposed to cocaine—was unintentional. See *People v Demers*, 195 Mich App 205, 206-207; 489 NW2d 173 (1992) (describing jury's power to "dispense mercy by nullifying the law and returning a verdict less than that required by the evidence"). In addition, the fact that the person who supplied Thomas with the controlled substance later alleged that it was actually white heroin undermined the prosecution's contention that Thomas delivered fentanyl.

Furthermore, even if we determined that the evidence was inadmissible and that defense counsel had no strategic reason for allowing the evidence to go unchallenged, Thomas has not demonstrated a reasonable probability that the outcome of the trial could have been different if counsel had objected. Thomas admitted that he sold a controlled substance to Floyd, and Floyd testified that he and Jackson drove to his mother's house to use the substance. As already explained, it is reasonable to infer that Jackson ingested the substance after Floyd passed out, resulting in her death. In light of the other evidence presented against Thomas, it is improbable that the jury would have acquitted Thomas merely because it did not know where Thomas obtained the fentanyl or that Thomas later learned he received the "wrong product" from an unnamed drug dealer.

---

[2] *People v Thomas*, unpublished order of the Court of Appeals, entered November 16, 2018 (Docket No. 341727).

In his Standard 4 Brief, Thomas raises several additional arguments regarding defense counsel's performance. Because Thomas did not request a new trial or an evidentiary hearing, review of these ineffective-assistance claims is limited to errors apparent from the record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002).

Thomas first argues that his trial counsel provided ineffective assistance of counsel when he failed to request a competency hearing. We disagree.

The presumption of competency is found in MCL 330.2020(1), which provides, in relevant part:

> A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner.

Thomas claims that he told his trial counsel about his mental health issues and that counsel failed to request a competency hearing. Thomas further claims that he did not understand the trial proceedings. However, Thomas fails to point to anything in the record that supports his assertion that he was incompetent to stand trial. Again, this Court's review is limited to mistakes apparent from the record because the trial court did not conduct a hearing to determine whether counsel was ineffective. *Lane*, 308 Mich App at 68; *Rodriguez*, 251 Mich App at 38; see also *People v Mette*, 243 Mich App 318, 332 n 8; 621 NW2d 713 (2000) ("[B]ecause there is nothing in the record to indicate that defendant was incompetent to stand trial, defendant's alternative, unpreserved claim that his counsel was ineffective for failing to object to defendant standing trial must also fail."). On this record, we cannot conclude that Thomas's trial counsel was ineffective because he failed to request a competency hearing. Similarly, Thomas's arguments that counsel failed to effectively communicate with him or allow him to present an insanity defense must also fail because there is nothing in the record to support these claims. See *Lane*, 308 Mich App at 68.

Finally, Thomas argues that his trial counsel was ineffective for refusing to allow him to testify in his own defense. The record does not support Thomas's claim; instead, it shows that while under oath Thomas waived his right to testify, agreeing that his decision was "my free choice." Thus, Thomas has failed to establish the factual predicate for his ineffective-assistance-of-counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Affirmed.

/s/ Anica Letica
/s/ Michael J. Kelly
/s/ Mark T. Boonstra