*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEHNEL JEAN PORÉ,

        Defendant-Appellant.

UNPUBLISHED
March 24, 2022

No. 353704
Montcalm Circuit Court
LC No. 2019-026184-FH

Before: CAVANAGH, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of possession of a controlled substance (methamphetamine), MCL 333.7403(2)(b)(*i*), second offense, MCL 333.7413(1).[1] The trial court sentenced defendant to a prison term of 1 to 20 years, with 129 days of jail credit. Finding no error requiring reversal, we affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

On December 10, 2019, Michigan State Police (MSP) Trooper Cole Montez and his partner were dispatched to a domestic dispute at a home where Leslie Talley Kibler, Jr.; Kibler's girlfriend, Patrisia Newland, and defendant resided. Newland's mother, Trudy Carnes, stayed at the home off and on to help with babysitting. Defendant made the 911 call to report that Kibler had assaulted her. Trooper Montez testified at defendant's trial that defendant told him she had taken methamphetamine approximately 10 hours earlier, and heroin 36 hours before that. She said that she had not slept for two days and was not feeling well, so she went into the bedroom shared by Kibler and Newland and asked if someone would call 911. Receiving no answer, she left, but then went back into the bedroom and jumped on the bed. Kibler assaulted her after she jumped on the bed. Trooper Montez testified that defendant had red marks on her right eyebrow and left cheek.

---

[1] The jury acquitted defendant of domestic violence, MCL 750.81(2), second offense, MCL 750.81(4).

Responding to the call in a backup capacity, MSP Trooper Trevor Rogers encountered Kibler, and talked with him for about 20 minutes. As a result of this conversation, Trooper Rogers searched the car defendant had been driving, looking primarily for a black and white wallet that, according to Kibler's and Newland's testimonies, belonged to defendant. Not finding the wallet, Trooper Rogers spoke again with Kibler. As a result of this second conversation, he and Kibler looked for the wallet in the basement, where defendant lived. Kibler found the wallet in the wall, behind a cinderblock. The wallet contained needles, three pouches of ascorbic acid, small cotton swabs, and a substance later determined to be methamphetamine. Trooper Rogers did not attempt to take fingerprints from the wallet because its coarse material was not conducive to fingerprinting and because his investigation made him confident about who owned the wallet.

According to Kibler, he and defendant worked together repairing and remodeling homes. They worked overnight from December 9 to December 10, leaving the jobsite for home between 7:00 and 7:30 a.m. When they got home, Kibler immediately went to bed. He woke up to defendant punching him. Kibler testified that defendant had been using methamphetamine and had been awake for three or four days. Kibler said that defendant kept her drugs in a black, white, and red women's wallet. Shown a photograph of the wallet retrieved from the basement, Kibler identified it as defendant's. He testified that he saw defendant with the wallet daily and that she kept it on her or near her all the time.

At defendant's trial, Newland also testified that the black and white wallet belonged to defendant and that she kept it with her almost all the time. She also testified that the basement was basically defendant's area, and that neither she nor Kibler spent time in the basement with defendant.

Testifying on her own behalf, defendant acknowledged that she and Kibler used drugs together before they went to work on the night of December 9, but she insisted that neither of them had the black and white wallet. Defendant said that the last time she saw the wallet was December 7, when Carnes threatened to call the police about her and Kibler's drug use. Kibler had called defendant at work and told her that the house had to be purged of drugs. Defendant texted Kibler with the location of anything she had, including the wallet. He later told her that everything was out of the house. Defendant testified that she did not know that the wallet was behind the wall and that she never would have put it there. Implying that someone else could have stashed the drugs in the basement, defendant testified that at least four other known drug users had been in the basement during the week before December 10.

Defendant testified that she was going through withdrawal as she and Kibler left the jobsite on the morning of December 10. She was starting to panic, feel anxious, and see stars. Upon arriving home, she sat in the truck for a few minutes and broke down crying. She knew she needed to call 911, but she could not see her phone well enough to call 911. She went through the door leading from the garage into Kibler and Newland's bedroom, told them that she could not breathe, and asked them to call 911. No one moved. After several attempts to call 911 herself, or to have someone call 911 for her, defendant found herself lying on Kibler and Newland's bed with her head in Newland's lap. Newland was shielding defendant's face from Kibler's blows, while Carnes was trying to pull Kibler off defendant. Soon thereafter, defendant was able to breathe clearly. She called 911 to report that Kibler had assaulted her. Defendant acknowledged that she

was an addict, a fact that she never tried to hide from the police. She said that she was in recovery and was not proud of the fact that she had had a short relapse but was trying to bounce back.

After closing arguments and jury instructions, the jury took less than 40 minutes to convict defendant of possession of a controlled substance (methamphetamine). The trial court subsequently sentenced defendant as indicated. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that the evidence admitted at trial was insufficient to support her conviction. We disagree.

We review a challenge to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. See *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We "draw all reasonable inferences and credibility choices in support of the jury verdict," *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted), and defer to the fact-finder's role in deciding the weight and credibility to give to a witness's testimony, see *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997).

The jury convicted defendant of violating MCL 333.7403(2)(b)(*i*), which states in relevant part:

> (1) A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.
>
> (2) A person who violates this section as to:
>
> * * *
>
> (b) Either of the following:
>
> (*i*) A substance described in section [MCL 333.7212(1)(h) or MCL 333.7214(c)(ii)] is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $15,000.00, or both.

MCL 333.7214(c)(*ii*) prohibits the possession of any substances that contain any quantity of methamphetamine.

To obtain a conviction in the present case, the prosecution had to prove that: (1) defendant possessed methamphetamine, and (2) she knew that she possessed methamphetamine. M Crim JI 12.5. Possession does not necessarily mean ownership, but can mean either that the defendant "has actual physical control" of the controlled substance, or the "right to control" the controlled

-3-

substance, "even though it is in a different room or place." Possession may be sole or joint. M Crim JI 12.7.

The evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that defendant knowingly or intentionally possessed methamphetamine. Defendant testified unequivocally that she used the wallet at issue to store drugs that belonged to her and Kibler. Kibler and Newland testified that defendant typically kept the wallet close at hand, and defendant testified that when Kibler informed her that all the drugs had to be out of the house, she told him the location of the wallet. This testimony indicates that defendant not only knowingly and intentionally possessed methamphetamine, which she stored in the black and white wallet but also that she exercised sufficient control over the wallet to hide it where others could not easily find it.

Defendant argued at trial that she thought that the wallet in which methamphetamine was found had been removed from the house by December 7 and implied that the drugs could belong to drug users who visited the house and had access to the basement the week before December 10. Defendant's testimony was uncorroborated, and the verdict indicates that the jury did not find it credible. When reviewing challenges to the sufficiency of the evidence, this Court does not interfere with the fact-finder's credibility decisions. See *Mehall*, 454 Mich at 6.

On appeal, defendant contends that the only story that makes sense is that she did not know about the methamphetamine discovered in the basement on December 10. The basis for her position is Kibler's testimony that he saw defendant with the black and white wallet while they were at the jobsite on December 9, and her assertion that it was impossible for her to have taken the wallet to the basement before the police arrived without Carnes seeing her, and Carnes testified that she had not seen defendant anywhere but near the bedroom.

Defendant's argument is unavailing. The trial transcripts contain minimal information about the layout of the house, and the information that is there does not provide grounds for concluding that it was impossible for defendant to put the wallet in the basement before the police arrived. Carnes testified that she did not know where defendant went after she got home from the jobsite. She did not know whether defendant was in the basement or in the garage; she just knew that defendant was not in the house. Carnes's testimony does not foreclose the possibility that, if defendant had the wallet at the jobsite, she could have put it in the basement after she returned home on the morning of December 10.

Viewing the evidence in the light most favorable to the prosecution, see *Meissner*, 294 Mich App at 452, making all reasonable inferences in favor of the verdict, see *Oros*, 502 Mich at 239, and deferring to the jury's credibility determinations, see *Mehall*, 454 Mich at 6, we conclude that a rational trier of fact could find that defendant knowingly and intentionally possessed the methamphetamine seized on December 10.

## III. PROSECUTORIAL MISCONDUCT

Defendant next contends that the prosecution committed numerous acts of misconduct, thereby violating her right to a fair trial. We are unpersuaded.

Generally, we review a claim of prosecutorial misconduct de novo to determine whether the identified conduct deprived the defendant of a fair trial. See *People v Dunigan*, 299 Mich App

579, 588; 831 NW2d 243 (2013). However, defendant did not preserve this issue by contemporaneously objecting and requesting a curative instruction. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). For unpreserved claims of prosecutorial misconduct, this Court examines whether the claimed error amounted to plain error that affected the defendant's substantial rights. See *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). To prevail under plain error review, a defendant must establish that error occurred, that the error was obvious, and that it affected his or her substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affected substantial rights if it affected the outcome of the proceedings. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (alteration in original), quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

The test for prosecutorial misconduct is whether the criminal defendant has been denied a fair trial. *People v Rodriguez*, 251 Mich App 10, 29-30; 650 NW2d 96 (2002). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135-136; 755 NW2d 664 (2008). The cumulative effect of several minor errors may warrant reversal although the individual errors would not. *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003).

Defendant first claims that the prosecutor impermissibly shifted the burden of proof to defendant during his cross-examination of defendant. Defendant specifically takes issue with the prosecutor asking defendant why she had waited until everyone's testimony was complete to allege that Newland had shielded her from Kibler's blows and asking why she did not tell the police at the scene that the drugs were Kibler's, rather than hers.

A prosecutor may not make comments that shift the burden of proof to the defense; accordingly, a prosecutor may not imply in closing argument that the defendant must come forth with a reasonable explanation for damaging evidence or otherwise has a duty to produce evidence, but may attack a defendant's credibility. See *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). Viewing as a whole the comments to which defendant objects, and evaluating them in light of defense arguments and the relationship they bear to the evidence admitted at trial, see *Brown*, 279 Mich App at 135-136, we conclude that the prosecutor's comments attacked defendant's credibility and the credibility of her defense, but did not shift defendant's burden and, therefore, did not constitute prosecutorial misconduct, see *Fyda*, 288 Mich App at 464.

The prosecution's questions implied that defendant's theory of defense was unpersuasive. During his opening statement, the prosecutor argued that defendant's claim that the drugs were not hers belied common sense. According to the prosecutor, given that defendant called police to report Kibler's assault, it made no sense for Kibler to suddenly announce the presence of drugs in the house if they belonged to him, his girlfriend, or her mother. The prosecution's cross-examination put defendant's credibility, and the credibility of her defense theory, squarely at issue by implying that her condition on the night of the incident rendered her memory of events unreliable, that witnesses not under the influence of drugs offered consistent accounts, and that defendant's account was a fabrication. The prosecutor's closing argument was consistent with his

cross-examination. The prosecutor's comments did not shift the burden of proof, but highlighted for the jury what the prosecutor proposed as insufficiencies in defendant's credibility and defense.

Defendant also claims that the prosecutor falsely alleged during closing that defendant did not tell investigating officers that the drugs were Kibler's not hers. A prosecutor may not argue facts that are unsupported by the evidence. See *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). The basis of defendant's argument is not found in the evidence admitted at trial, but instead her assumption that the prosecutor had watched the dashcam video of defendant being transported to jail. However, the dashcam video was not admitted into evidence, and defendant points to no record evidence that supports her claim that she told investigators that the drugs were Kibler's and not hers. A prosecutor may argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case. See *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Because there was no record evidence that defendant told the investigating officers that the methamphetamine belonged to Kibler, it was not misconduct for the prosecutor to state during closing that the first time "we hear" that the drugs were his was during defendant's trial testimony.

Defendant next claims that the prosecutor committed misconduct by asking defendant irrelevant and prejudicial questions after she invoked her Fifth Amendment right against self-incrimination. The Fifth Amendment provides that a person may not "be compelled in any criminal case to be a witness against himself." US Const, Am V; see also Const. 1963, art 1, § 17. "The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment." *People v Clary*, 494 Mich 260, 265; 833 NW2d 308 (2013). It has long been the case that:

> The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. When he takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. He may be examined for the purpose of impeaching his credibility. . . . His waiver is not partial; having once cast aside the cloak of immunity, he many not resume it at will, whenever cross-examination may be inconvenient or embarrassing. If, therefore, the question asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination they were proper questions, unless there is some reason of policy in the law of evidence with requires their exclusion. [*Raffel v United States*, 271 US 494, 496-497; 46 S Ct 566; 70 L Ed 1054 (1926) (citations omitted).]

Defendant invoked the Fifth Amendment to seven questions. In the first six questions, the prosecution sought to elicit defendant's confirmation of testimony she had already given. The prosecution asked defendant: (1) whether she had possessed the black and white wallet; (2) whether she possessed it on December 6; (3) whether she possessed it on December 7; (4) whether it was her testimony that she did not see it after December 7; (5) whether it was "an amazing coincidence that [the wallet] ended up in the wall, right where [she slept], in the basement of that house, and (6) whether she wanted the jury to believe that even though the drugs in the wallet were "our drugs," she had no idea what was going on with the wallet on December 10. In the seventh question, the prosecutor asked what substances Kibler was using.

Defendant asserts that these questions were irrelevant and prejudicial. To the contrary, the questions were relevant because they pertained to possession, an element of the drug charge against defendant that the prosecution was required to prove, as well as to defendant's theory that the methamphetamine belonged to someone else.[2] Any prejudice arising from the first six questions was arguably minimal, given that defendant had already confirmed that she used the wallet when she was "keeping" drugs she claimed belonged to her and Kibler, that she last kept their drugs in that wallet on December 7, that neither she nor Kibler had the wallet on the night of December 9, and that she did not know that the wallet was behind the wall. Prejudice arising from the seventh question, if any, also would have been minimal because testifying that Kibler used drugs would have supported defendant's theory that the drugs were not hers.

Relying on *People v Giacalone*, 399 Mich 642; 250 NW2d 492 (1977), defendant implies that the prosecutor committed an ethical violation when he asked defendant questions, knowing that she would invoke the Fifth Amendment. The reasoning in *Giacalone* is inapplicable in the present case.

In *Giacalone*, one of three convicted perpetrators of a jewelry store robbery appealed his conviction, arguing that the prosecutor had committed misconduct requiring reversal by calling another of the perpetrators to testify against him, even though the prosecutor had been informed that the witness would not testify because he had been convicted of the same robbery in a separate trial and his conviction was on appeal. At trial, the prosecutor called the witness to the stand and asked him his name and whether he remembered what happened on the night of the robbery. The witness gave his name, but invoked the Fifth Amendment in response to the second question. The prosecutor then sat down.

In reversing the defendant's conviction, the Michigan Supreme Court referred to an American Bar Association standard that deemed it unprofessional conduct for a prosecutor to "call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege." *Id*. at 645 (quotation marks and citation omitted). The Court explained that the reason for the rule is that "[w]hen an alleged accomplice invokes the privilege in the presence of the jury, prejudice arises from the human tendency to treat the claim of privilege as a confession of crime, creating an adverse inference which an accused is powerless to combat by cross-examination." *Id*. (quotation marks and citation omitted). Because the jurors had been informed through other testimony that the witness and the defendant were connected, and that they had committed the crime, any adverse inference the jury might have drawn from the witness's refusal to answer a question may have carried over to the defendant. *Id*. at 646.

The present case is distinguishable from *Giacalone* in two regards. First, unlike the prosecutor in *Giacalone*, the prosecutor in the present case had not been assured that defendant would refuse to answer questions. During the recess taken after defendant asked if she could

_____

[2] In addition, defendant opened the door to the question about what substances Kibler was on when she stated on cross-examination that the prosecutor "did not know what substances everyone else was on." The prosecutor then asked what substances Newland and Carnes were on, and defendant testified that neither was on substances. When the prosecutor asked what substance Kibler was on, defendant invoked the Fifth Amendment.

invoke the Fifth Amendment, defense counsel spoke with defendant and then informed the trial court and the prosecutor that defendant "would still like to complete her testimony." On the basis of this information, the prosecution could have supposed that defendant would refuse to answer, but it was equally reasonable to infer that defendant would testify without invoking the Fifth Amendment. Second, not only did defendant invoke the Fifth Amendment to avoid confirming testimony that she had already given, but, unlike the defendant in *Giacalone*, the present defendant could combat on redirect any adverse inferences that the jury might have drawn during her cross-examination.

Lastly, defendant contends that the prosecutor's questioning of defendant was unnecessarily aggressive, "rude, argumentative, sarcastic, mocking and obnoxious," and that the prosecutor denigrated her demeanor during his closing argument, stating that, during cross-examination, defendant "had smirked, had become angry and upset, and had stopped answering questions." Defendant contends that the prosecutor's conduct was "very similar to behavior this Court recently found so reprehensible as to require reversal" in *People v Evans*, 335 Mich App 76; 966 NW2d 402 (2020). Defendant is incorrect.

In *Evans*, 335 Mich App at 90, this Court explained that "[c]ross-examination is a critical method of testing a witness's credibility and exposing weakness in a witness's account. And it is appropriate that cross-examiners be afforded wide latitude to do their job." Further,

> "[o]ne of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." [*Id*., quoting *People v Dellabonda*, 265 Mich 486, 499-500; 251 NW 594 (1933).]

This Court concluded that the prosecutor repeatedly transgressed the "well-established boundaries" of cross-examination during the prosecution's cross-examination of defendant's expert witness, thereby denying the defendant a fair trial. *Evans*, 335 Mich App at 79. The prosecutor: (1) "repeatedly and gratuitously disparaged [the expert's] qualifications and her intelligence"; (2) "inaccurately characterized [her] opinions in a sarcastic, mocking, and inaccurate manner' in order "to generate the jury's scorn rather than to shed light on the issues presented by the evidence"; (3) "repeatedly accused [the expert] in a badgering fashion of deliberately ignoring or withholding evidence from the jury," and (4) "accused [the expert] of being unable to distinguish 'right from wrong.' " *Id*. at 93. This Court noted that "[n]o evidence underlay these attacks." *Id*. Specific examples include the prosecutor's likening the expert to a cartoon character,[3] his offering to "write [his question] out in Crayon" so the expert could understand it, and his insistence that the expert's refusal to opine about the defendant's sanity after the murder was "hypocrisy." *Id*. at 95, 99, 101. This Court described the prosecutor's cross-examination as "brutal and improper." *Id*.

---

[3] The prosecutor referred to the defendant's expert in psychology as "Lucy," thereby equating her with a character in the well-known Peanuts comic strip who was often portrayed as "a bumbling and unqualified psychiatrist dispensing useless advice from a lemonade booth." *Evans*, 335 Mich App at 95.

at 105. Nothing in the examples of alleged prosecutorial conduct provided by the present defendant provides is as blatantly and indisputably offensive as was the *Evans* prosecutor's comments. The prosecutor's questions in the present case arose from defendant's uncorroborated testimony, elucidated that testimony, and spoke to defendant's credibility. The prosecutor was not required to state the inferences that could be drawn from defendant's unsubstantiated testimony in the blandest possible terms. See *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995).

Lastly, defendant claims that the prosecutor denigrated her demeanor during his closing argument by stating during cross-examination that defendant had smirked, had become angry and upset, and had stopped answering questions. Defendant does not contend that the prosecution's description of her conduct was inaccurate, nor does she cite any authority for the proposition that the prosecution's characterization of conduct easily observable by the jury constitutes misconduct.

For the foregoing reasons, we conclude that defendant has failed to establish any instance of misconduct on the part of the prosecutor; therefore, her claim of prosecutorial conduct must fail. See *Gibbs*, 299 Mich App at 482.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that defense counsel provided constitutionally ineffective assistance in numerous ways. Again, we disagree.

Generally, whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.* "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted). Defendant preserved her claim of ineffective assistance of counsel by filing in this Court a motion for remand to the trial court for an evidentiary hearing to further develop the record. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). However, because we denied the motion, our review is review is limited to mistakes apparent on the record.

Effective assistance of counsel is presumed, and defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (quotation marks and citation omitted). Defendant must overcome the strong presumption that counsel's actions constituted sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

Defendant contends that defense counsel rendered constitutionally ineffective assistance by failing to: (1) cross-examine Carnes and Newland about drug addicts who visited the house

during the week before December 10, (2) admit text messages between defendant and Kibler related to purging the house of drugs, (3) move in limine to prohibit discussion in the jury's presence of defendant's prior drug use, (4) prepare defendant to testify, and (5) object to numerous instances of prosecutorial misconduct. We will address each in turn.

Defendant asserts that defense counsel rendered deficient performance by failing to cross-examine Newland and Carnes regarding other drug users who visited the house and could have left drugs in the basement.

How to question a witness is presumed to be a matter of trial strategy. See *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). The record in the present case indicates that defense counsel's strategy was to suggest that officers had settled on defendant as the guilty party rather than conduct a thorough investigation. Defense counsel elicited from Trooper Rogers that he did not ask if any outsiders had access to the basement and that he was confident that the drugs he found belonged to defendant. Counsel used this testimony during closing, along with Trooper Rogers's testimony that he did not fingerprint the wallet or the baggies in the wallet, to imply that the investigation was insufficient. Although defense counsel suggested during her opening that the drugs could belong to residents of the house other than defendant, she did not suggest that they could belong to visitors to the house. Cross-examining Carnes and Newland regarding whether known drug users had visited the house and gone into the basement could have risked responses that undermined counsel's strategy. Defense counsel's cross-examination was driven by her viable trial strategy. That the strategy did not work does not necessarily amount to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Accordingly, defendant has failed to overcome the presumption that defense counsel's cross-examination of Carnes and Newland was consistent with sound trial strategy. See *Toma*, 462 Mich at 302.

Defendant next claims that defense counsel rendered ineffective assistance by failing to admit into evidence text messages between her and Kibler showing that Newland and Carnes were aware of their drug use and that Carnes demanded that they purge the house of all drugs or she would report them to the police. According to defendant, the text messages would support her contention that she did not know that the drugs were in the basement. This claim fails, however, because defendant has not established that the text messages existed at the time of the trial. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (indicating that the defendant has the burden of establishing the factual predicate of her claim that defense counsel did not provide effective assistance). Defendant testified about the content of the text messages at trial, and she indicates that she attached them as Exhibit E to her appellate brief. However, there is no "Exhibit E" to defendant's main brief or to her motion to remand. Defendant's failure to establish that the text messages existed at the time of trial is fatal to her claim that defense counsel was ineffective for failing to introduce the messages into evidence. See *id*.

Defendant also contends that defense counsel rendered ineffective assistance by failing to move in limine to prevent discussion of defendant's prior drug use in the presence of the jury. This claim also fails. The record indicates that defendant defended against the domestic violence charge by arguing that she had not intended to assault anyone, and that the behavior for which she had been charged with domestic violence was, in fact, an attempt to get help. Defense counsel represented in her opening statement that the charge arose from defendant's attempts to get Kibler and Newland to call 911 because defendant was "ill, perhaps even coming down off of the effects

of the drugs that were taken the day before . . . in her estimation, anywhere from twelve to fourteen hours beforehand." Defendant testified consistent with this theory, and the jury acquitted her of the domestic violence charge. On this record, defendant has not overcome the presumption that defense counsel's decision not to move in limine to prohibit discussion of defendant's prior drug use was not sound trial strategy. See *Toma*, 462 Mich at 302.

Defendant also criticizes defense counsel for not requesting an instruction limiting the jury's consideration of testimony about her prior drug use. However, frankness about her drug use appears to have been part of defendant's strategy to engender credibility. Defense counsel stated in her opening that defendant had made a lot of mistakes, but that she had not made this one. Defendant testified consistently with this strategy, and defense counsel returned to it in her closing argument. Courts give defense counsel "wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *Heft*, 299 Mich App at 83. That this strategy did not work does not necessarily amount to ineffective assistance of counsel. *Petri*, 279 Mich App at 412.

Next, defendant claims that defense counsel rendered ineffective assistance by failing to prepare her to testify, by not requesting a lengthier recess or a mistrial after defendant asked about asserting the Fifth Amendment, and by telling defendant during the recess that she could invoke the Fifth Amendment.

There is no record evidence that defense counsel told defendant during the recess occasioned by defendant's broach of the Fifth Amendment issue that defendant could selectively invoke the Fifth Amendment during cross-examination. Defendant states in her brief to this Court that defense counsel so advised her, and refers to an affidavit submitted to this Court in support of her contention. However, defendant's affidavit makes no mention of the matter. Defendant's claim of ineffective assistance arising from defense counsel's alleged advice during the recess fails because defendant has not provided the factual predicate for the claim. See *Hoag*, 460 Mich at 6.

Defendant also claims ineffective assistance on the basis that defense counsel did not prepare her to testify. This claim is belied by the record. As already indicated, defendant's testimony regarding the alleged domestic assault was consistent with the defense theory laid out in defense counsel's opening statement, and it succeeded in persuading the jury to acquit on that charge. As to the drug charge, the theory of defense articulated by defense counsel during her opening statement was that defendant had made a lot of poor choices, but possessing the methamphetamine found in the house on December 10 was not one of them. She did not know that methamphetamine was in the house, she was not the only drug user in the house, and she was not the only resident with access to the basement. That defendant's testimony was consistent with this theory points to the likelihood of prior preparation of the witness.

The focus of defendant's claim that defense counsel did not prepare her to testify is her assertion that defense counsel should have developed a strategy that would have allowed her to deal with questions about her prior drug use that did not include invoking the Fifth Amendment. As already indicated, there is no record evidence that defense counsel advocated a strategy that called for defendant to invoke the Fifth Amendment. Trial strategy relative to the drug charge called for defendant to be frank about past decisions, including her recent relapse, so that the jury would find her credible when she asserted that she did not knowingly possess the

methamphetamine at issue. Invoking the Fifth Amendment would have been antithetical to this strategy. Defense counsel may have told defendant that she was entitled to invoke the Fifth Amendment, but there is no evidence that she advised defendant to so plead. Because defendant has failed to establish the factual predicate for this claim of ineffective assistance, her claim must fail. See *id*.

Defendant's next claim of ineffective assistance pertains to defense counsel's response to defendant's query about invoking the Fifth Amendment. Defendant asserts that defense counsel should have asked for a lengthier recess or a mistrial. Defendant contends that a lengthier recess would have allowed defense counsel to do research. However, defendant has failed to develop this argument by identifying what kind of research was necessary and to what end. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (quotation marks and citation omitted). Accordingly, we decline to consider further defendant's claim of ineffective assistance predicated on defense counsel's alleged failure to ask for a lengthier recess to do research. See *id*.

Defendant also asserts that defense counsel was ineffective for failing to move for a mistrial. "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs [her] ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). Defendant has cited no authority, nor have we found any, for the proposition that a defendant who voluntarily testifies at his or her criminal trial is necessarily prejudiced by invoking the Fifth Amendment when asked during cross-examination to confirm testimony that she had already given. Defendant elected to testify, set forth her version of events during direct examination, and then invoked the Fifth Amendment when the prosecution asked her to confirm what she had already said. Any adverse inference that might have arisen from defendant's invoking the Fifth could have been combated on redirect examination. For these reasons, defendant has not shown that selectively invoking the Fifth Amendment so impaired her ability to get a fair trial that a mistrial was warranted. Therefore, defense counsel's failure to request a mistrial does not constitute ineffective assistance. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (indicating that failure to advance a meritless argument does not constitute ineffective assistance of counsel).

Next, defendant claims she received ineffective assistance when defense counsel failed to object to various instances of prosecutorial misconduct. As already explained, none of the instances to which defendant objects on appeal rose to the level of prosecutorial misconduct. Accordingly, defense counsel was not ineffective for deciding not to object. See *id.*

Defendant raises several other claims of ineffective assistance, all of which depend for support on materials that were not submitted to the trial court and, consequently, are not part of the record. Parties generally may not expand the record on appeal. See *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). MCR 7.216(A)(4) provides a mechanism for this Court to expand the record should justice require. However, analysis of defendant's arguments and supporting materials convinces us that justice does not require expanding the record. Therefore, we persist in limiting our review of defendant's claims of ineffective assistance to errors apparent

on the record and decline to consider further any claims based on materials not part of the record.

Affirmed.

/s/ Mark J. Cavanaugh
/s/ Jane E. Markey
/s/ Deborah A. Servitto